[Crim. No. 3737. First Dist., Div. Two. Oct. 17, 1960.]

THE PEOPLE, Respondent, v. SAM BERNALLEY, Appellant.

Arthur D. Klang, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Joseph I. Kelly, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—Defendant appeals from a judgment of conviction rendered on a jury verdict finding him guilty of violating section 245 of the Penal Code [assault with a deadly weapon], and section 203 of the Penal Code [mayhem]. The arguments made on appeal are that: (1) the evidence does not support the judgment, and (2) the trial court erred in admitting into evidence a declaration of the victim and in its instructions to the jury relating to the declaration.

The record reveals the following: The victim, Teddy Emmerson, first met the defendant, Sam Bernalley, on Saturday, March 7, 1959. The victim entered a café, and saw his wife, Marilyn, talking to the defendant. Mrs. Emmerson addressed the defendant as "Daddy" and introduced him as her stepfather. The victim thereafter saw the defendant several times with Mrs. Emmerson. On Sunday, March 8, the victim and his wife had dinner with the defendant at his apartment. Thereafter, Mrs. Emmerson informed her husband that they were going to stay with the defendant until they got back on their feet. On the afternoon of Monday, March 9, about 6 p. m., the three met in Fish's bar and the defendant gave Emmerson the keys to the apartment and left saying "You kids go up. I will be back—in later." The Emmersons went to the apartment about 9 p. m., had dinner,

played a record and watched television. After 11 p. m., Mrs. Emmerson left the apartment to obtain some toothache medicine and then went to work. Emmerson told her to take the keys and gave her $2.00.

After his wife left, Mr. Emmerson went to sleep on the couch. During the night or early morning, he was awakened by someone who hit him in the eyes. He felt something run down his face and could not see. He asked ''What happened? What did you do to my eyes? What happened? What happened? What did you do to my eyes? Get me a doctor. Call me a doctor or get me to a hospital.'' The defendant cursed and said ''I been knocking on the door. You lock me out.'' The defendant then further cursed Emmerson and finally led him outside to the curb and left him standing there. Emmerson testified he shouted for help and could not be sure but estimated he stood there about one half hour and got cold and chilled.

Police Officer Gai testified that about 2:55 a. m. on March 10, he received a call directing him to the scene of the crime. He arrived a little before 3 a. m. and observed the victim holding a bloody handkerchief to his eyes. The officer told his partner to call for an ambulance and several times asked the victim what happened. Emmerson, who was distraught and incoherent, replied something like ''Sam cut my eyes.'' Emmerson fainted and within a few minutes, the ambulance arrived and took him to the hospital. Emmerson was in the hospital until the end of April. The doctor testified that both of Mr. Emmerson's eyes had been lacerated by a sharp instrument and that he had lost any useful vision in both eyes although he could distinguish light and dark. The defendant was arrested the evening of March 10 and a knife was found in his possession.

Mr. Avila, who lived in the apartment directly below the defendant, heard two people making a great deal of noise and a woman using profane language until about 11 p. m., when he went to sleep. The victim and his wife both testified that they did not have an argument that evening. Mr. Avila was awakened early some time the next morning by several loud bumps on the door of defendant's apartment. He heard someone walk down the stairs and a few minutes later, he heard someone who sounded like the defendant groaning as he placed a ladder against the side of the house next to a window to the defendant's apartment. The person climbed the ladder and entered the defendant's apartment. Then

Mr. Avila heard the defendant speaking in a loud, mad voice. It then got quiet and about 15 minutes after the defendant climbed into the apartment, Mr. Avila heard an ambulance siren.

The first contention on appeal is that the evidence does not support the judgment as it does not sufficiently connect the defendant with the crime. There is no merit in this argument as there is ample circumstantial evidence that the defendant was at the scene of the crime. The defendant's presence at the scene of the crime was established by both Mr. Avila and the victim who heard the defendant's voice. At the time of his apprehension, the defendant had on his person a knife similar to the instrument used to stab the victim. Although none of these factors by themselves would be sufficient to establish the appellant's guilt, in the aggregate, they do supply the quantum of proof necessary to sustain the judgment. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) The knife found on the person of the appellant constitutes a link in the chain of circumstances which tends to connect the defendant with the commission of the particular crime charged. (*People* v. *Winters,* 29 Cal. 658.) On appeal, as in the trial court, the defendant argues that he is not sufficiently connected with the crime, as there is a possibility that Mrs. Emmerson could have committed the crime. This argument, however, ignores the fact that even though Mrs. Emmerson was a witness for the defendant at the trial, she denied the crime. Furthermore, when first questioned, the defendant stated that he was with a Mrs. Johnson at the time of the crime. When the police inspector informed the defendant that Mrs. Johnson denied being with him during these hours, saying ''Sam, you have lied to me,'' the defendant made no reply. Later he admitted that he had lied to protect Mrs. Johnson. He then stated he was all alone between 2 a. m. until after 3 a. m. Such falsehoods and deceptions indicate a consciousness of guilt. (*People* v. *Tolson,* 109 Cal. App.2d 579 [241 P.2d 32].)

The second argument on appeal is that the trial court erred in admitting into evidence as a spontaneous utterance Emmerson's reply to Police Officer Gai that ''Sam cut my eyes.'' It is argued that the statement is too remote in time and does not meet all of the requirements for the admissibility of a spontaneous utterance. The police officer testified that at the time of the statement, Emmerson was bleeding and sobbing and incoherent. Several times, the officer asked

"What happened" and the victim said something like "Sam Bernalley cut me." [██] In order for a spontaneous declaration to be admissible in this state, it is required that (1) there be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, *i.e.*, while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it. (*Showalter* v. *Western Pacific R.R. Co.*, 16 Cal.2d 460, 468 |100 P.2d 895].) There can be no question that the occurrence here meets the first and third requirements as the cutting of the victim's eyes was startling enough to render the utterance spontaneous and that the declaration was a natural and spontaneous outgrowth of the occurrence preceding it.

It is argued, however, that the declaration is not trustworthy because the lapse of time between the occurrence and the utterance gave Emmerson ample opportunity to reflect and because of the defendant's involvement with Mrs. Emmerson, supplied Mr. Emmerson with a motive for wanting to make a statement which would cause the apprehension of the defendant. ██ The amount of time elapsing between the occurrence and the utterance is not alone the controlling factor. (*People* v. *Costa*, 40 Cal.2d 160 at 169 [252 P.2d 1].) Rather, the test is whether or not the statement was made while the declarer's reflective powers are yet in abeyance. (*Showalter* v. *Western Pacific R.R. Co.*, *supra.*) In *People* v. *Keelin*, 136 Cal.App.2d 860 [289 P.2d 520, 56 A.L.R.2d 355], the victim was unconscious for 24 hours after the occurrence and named the defendant upon regaining consciousness. ██ In the instant case, while there is no question that the victim was in pain and incoherent, conflicting inferences may be drawn as to the spontaneous nature of the statement offered and there is conflicting evidence as to the lapse of time. In such a situation, the ruling of the trial court admitting the statement is preliminary only and the jury must ascertain the ultimate fact of admissibility before the evidence may be considered. (*People* v. *Keelin*, *supra.*) The rule was properly applied in the instant case and the jury was carefully and correctly instructed, both at the time of the initial ruling and at the time the case was submitted to them.

Therefore, it was properly left to the jury to determine in

the light of all the evidence whether the declaration met the requirements of admissibility. ▮ In a criminal prosecution the weight of evidence is for the jury, and if the circumstances reasonably justify the verdict of the jury, a reviewing court will not interfere with the verdict. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) A reviewing court cannot disturb the verdict of the jury unless it is clear that on no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Oliver,* *(Cal.App.) 6 Cal.Rptr. 194.)

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.

A petition for a rehearing was denied November 16, 1960.

*A hearing was granted by the Supreme Court on September 1, 1960. The final opinion of that court is reported in 55 Cal.2d —— [12 Cal. Rptr. 865, 361 P.2d ——].