[Crim. No. 437.   Fifth Dist.   Apr. 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. MIGUEL EUGENE LARES, Defendant and Appellant.

658

Lawrence M. Goldstein, under appointment by the Court of Appeal, and Gale & Goldstein for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—Miguel Eugene Lares, the defendant, familiarly known as "Mike," has been sentenced to the California Youth Authority after conviction of felony driving while intoxicated (Veh. Code, § 23101), and two counts of resisting a public officer; he came to grief when he unsuccessfully tried to mix whiskey drinking with automobile driving in Yolo County.

Immediately after school on the day of the incident, Lares picked up two 17-year-old friends in the family car, a 1964 Oldsmobile. The boys went to pay a telephone bill; the three teenagers then washed the car and afterwards went over to the home of a girl, Becky Estrada; up to that time no one had had any intoxicating drink. The defendant and one of his

friends each had a drink of intoxicating liquor after defendant obtained a fifth of whiskey; it was opened at about 7 o'clock, when Mike poured some of it into a glass which contained half mix and half whiskey and drank all, or at least part, of the liquid. This witness testified that by the time he got out of the car there was nothing unusual about Mike's driving; and that he had been with defendant for about four hours. Lupe Robert Cortez testified that up until approximately 6 p.m. on the day of the accident no one had had any intoxicating liquor to drink; that defendant Lares obtained a bottle of whiskey after that time, and that the latter drank whiskey from a glass on the River Road near the Anchor Inn as the car was stopped on the levee; about three-quarters was mix and a quarter whiskey, and the mix and whiskey came about an inch from the top of the glass; he thought that Mike drank all of his drink. He also testified that the appellant poured himself a second drink. Cortez testified that he got home at about 9:30 at night, but that when he left defendant, Mike Lares, was driving as he always did—normally; he admitted that he did not want to be riding with defendant when he was drinking, and defendant had had two drinks in his presence.

David Acosta testified that he saw defendant at about 10 o'clock on September 27, 1966, at his house. He and his brother, Benjamin Acosta, and Javier Martinez all were in the car later at the time of the accident. Benjamin Acosta was not present to testify at the trial as he was then in the army and Javier Martinez was also absent being then in Mexico. David stated that at 10:30 o'clock at night they went for a ride and Mike was driving; that he was in the back seat and his brother and Mike were in the front seat. They rode around until the accident happened about 11:30 p.m. David said that he saw Mike take two drinks in the car while they were riding around. He testified that, in his opinion, Mike was drunk; that he drove recklessly; that he was going at about 45 miles an hour when he tried to turn the corner just before the accident happened; that he smelled a strong odor of alcohol; that Mike drove fast and kept going off the road; that when the car went around the corner, the driver swerved to the right, and, because he was then about to hit a parked car, he turned back to the left and the car went into the ditch. The evidence is thus ample to show that the defendant was under the influence of alcohol prior to and at the time of the accident.

Witness David Acosta got out of the car after it overturned; his brother was in the front seat; Javier Martinez pulled his brother out, and as Benjamin walked along the road he fell to the ground. David was asked if Benjamin said anything about being hurt; at that time there was an objection by defense counsel that such an answer would involve hearsay. The prosecutor told the judge that the testimony was offered as something said in the flush of an exciting event and that such a spontaneous declaration was therefore admissible. The court overruled the objection. David testified that Benjamin said that he could not walk because his back was hurting him. David also testified that his brother was "knocked out." When the ambulance arrived at the scene, Benjamin was in the road lying face down. He was conscious and he talked to the ambulance attendants. The prosecutor elicited from the ambulance attendants what the injured person had said, and an objection was made that this would be hearsay. The prosecutor said that it was a declaration of pain, a statement as to physical condition, state of mind; the objection was overruled. The defendant was allowed to testify that Benjamin Acosta exclaimed that he had been in an accident; that he had walked some distance and found that he could go no further; that his back had given him great pain and that he collapsed. The attendants put the boy in the ambulance and took him to the hospital, where he was examined by the doctor on duty, was given a pain pill and released the next day. Benjamin Acosta's stepfather testified that the boy did not return to work immediately after the accident, because his back was bothering him and that for a period of two or three weeks he did not work. The doctor testified that at the time the Acosta boy was brought in he was suffering from acute back strain. He saw the boy for the first time in the emergency room when he was complaining of pain located more in the upper part than in the lower part of the back. He was conscious, oriented and alert.

After the accident, the police went to the home of Mike Lares, the defendant driver; his mother answered the door and called the boy; after that time the defendant became difficult to handle because of his condition, and the mother and the sisters had some words with the police. Finally, the police took the defendant to headquarters accompanied by his friend, who had brought the police to defendant's house, and defendant's sister.

The arguments on appeal do not involve the convictions on

the third and fourth counts, but concern themselves only with the felony conviction of driving while intoxicated. This crime is a violation of 23101 of the Vehicle Code, which reads as follows: ''Any person who, while under the influence of intoxicating liquor, or under the combined influence of intoxicating liquor and any drug, drives a vehicle and when so driving does any act forbidden by law or neglects any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes bodily injury to any person other than himself is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not less than 90 days nor more than one year and by fine of not less than two hundred fifty dollars ($250) nor more than five thousand dollars ($5,000).''

(See *People* v. *Clark,* 202 Cal.App.2d 513, 516 [20 Cal.Rptr. 803].)

The conviction on the felony charge is attacked by appellant on several grounds:

1) it is argued that there was no proper proof of bodily injury to any of the minors who were riding with the defendant; that the only evidence which tended to prove the injury of a guest or passenger was inadmissible as hearsay; that one of the reasons why the testimony offered on the latter point was inadmissible was that no opportunity was given to cross-examine the allegedly injured person and that this constituted a breach of the rights of the defendant under the federal Constitution; that the court erred prejudicially by refusing an ultimate continuance to permit the defense to procure a statement which the injured person had made to his draft board relative to his later physical condition and lack of injury;

2) it is urged that there was no proof that the defendant had broken the law in connection with his driving; and

3) it is claimed that the court committed prejudicial error by failing to instruct the jury that it could bring in a verdict of misdemeanor drunk driving as being included within the charge of felony drunk driving.

Although the prosecution is thus charged with multiple error, a scrutiny of these claims does not justify the contention that there should be a reversal of the judgment.

As we have seen, one of the elements of the crime defined by section 23101 of the Vehicle Code is that someone was injured as a result of driving the car while the defendant

was under the influence of alcohol. The appellant claims that "bodily injury" as used in the code section is so indefinite and uncertain as not to give a ground for a criminal conviction. The point has no merit. Bodily injury means just what it says—harm or hurt to the body. Common sense requires more for conviction than a "shaking up" of a person in a car which is in an accident, or fright, or a minor headache; it means very obviously a hurt to the body.    ▮   If the testimony supports a finding that Benjamin Acosta, who was in the car at the time of the accident, suffered such a hurt the conviction was justified as to that ground, and Dr. Andrew B. Adams, who .treated Benjamin Acosta, established that fact. He said that he treated him at the Yolo General Hospital very early in the morning of September 28, 1966, that in giving the history of his condition Acosta related that he was suffering from "back pain" located more in the "upper part than in the lower part" of his back. (*People* v. *Brown,* 49 Cal.2d 577, 587 [320 P.2d 5].) The doctor said that Acosta was suffering from "acute back strain." He discharged him in the morning of the next day, much improved. He treated him only by giving "an analgesic capsule," and telling him to come back if he had other problems. The appellant did not return. Other witnesses stated that he did not work for a period of two or three weeks. Webster's Third New International Dictionary defines "strain" as "a hurt or injury of a body part or organ resulting or such as results from excessive tension, effort, or use," and, also, as "an injury resulting from a wrench or twist and involving overstretching of muscles or ligaments (foot strain) (back strain)." In Dorland's Illustrated Medical Dictionary, 23d edition, a strain is said to be "An overstretching or overexertion of some part of the musculature." The proven injury was thus sufficient to meet the definition of bodily injury contained in section 23101 of the Vehicle Code.

. It is next contended that evidence relative to the injury given by several witnesses who were present at the scene of the accident constituted improper hearsay. Officer Richard A. Washabaugh testified that immediately after the accident Benjamin gave a moan, said that his wallet was in his back pocket and it hurt to reach for it; David Acosta testified that Benjamin said he could not walk because his back was hurting; William Howard Smith, the ambulance attendant, testified that Benjamin then said that he had been in an accident and after walking a short distance he slumped down into the

road and found that he could go no farther; John Schnack, the ambulance driver, testified that he heard Acosta say that he had a back injury, and Officer Reich recalled that he asked Benjamin if he were injured, and Benjamin said his back was ''hurting.''

The prosecution contended at trial that this testimony was allowable under the authority of Evidence Code section 1240, which provides: ''Evidence of a statement is not made inadmissible by the hearsay rule if the statement: (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception.''

Witkin states that this terminology of Wigmore is now established in California, and that while the early cases loosely used the phrase ''declarations part of the *res gestae*'' to describe several sorts of admissible hearsay, the statements now coming under this exception are properly described as ''spontaneous exclamations,'' ''spontaneous declarations,'' or ''spontaneous statements.'' (Witkin, Cal. Evidence (2d ed.) § 544, p. 517.)

The prosecution also argues on appeal that these statements were admissible under section 1250 of the Evidence Code, which holds: '' (a) Subject to Section 1252, Evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when: (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or (2) The evidence is offered to prove or explain acts or conduct of the declarant. (b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed.''

Section 1252 reads as follows: ''Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness.'' (See *People* v. *Bernalley,* 185 Cal.App.2d 326, 330 [8 Cal.Rptr. 375].)

Appellant's counsel argues that if hearsay evidence offered by the prosecution was properly admitted there also should have been admitted hearsay evidence as to what Benjamin Acosta had later advised his draft board concerning his

general condition of health. The point really centers about the ultimate refusal of the trial court to grant a continuance for the purpose of permitting appellant's counsel to secure from the military authorities the written showing which Benjamin had made at a different time concerning his health. In his brief, appellant alleges that in a medical questionnaire made on December 7, 1966, the following was certified to be true by Benjamin Acosta: that he had never had any illness or injury other than those already noted, and that he had not consulted or been treated by clinics, physicians, healers, or other practitioners within the past five years. On January 26, 1967, during the trial, a continuance was requested until 2 p.m. to produce these medical records. The court denied the request. As a reason for not being prepared as to this point at the time of trial, counsel for appellant state that defendant's trial counsel did not anticipate that the alleged hearsay evidence of Benjamin Acosta's statements at the scene of the accident would be admitted. On the motion for a new trial, it was argued that as soon as it was realized that inadmissible hearsay would be allowed by the court, defense counsel caused to be issued a *subpoena duces tecum* and served it on Marion Bailey, custodian of the military and health records of Benjamin Acosta; she first claimed privilege as to the information contained in the medical questionnaire but later waived the claim and attempted to procure for the court a certified copy of the document and testified that it could be secured within one day. This was in the morning of Wednesday, January 25, 1967. On Thursday morning, January 26, 1967, at 10 o'clock, defendant's counsel did not have the document but requested a further continuance until 2 o'clock on the same day, to obtain the evidence; the court denied defendant's motion for a continuance; at 1:30 p.m. of January 26, 1967, the information was available, but by then the defendant had rested his case and the court at that time was in the process of giving final instructions to the jury. All of the above facts were argued at the time of the motion for new trial, which was denied.

Granting or refusing a continuance is within the discretion of the court. (*People* v. *Hernandez,* 242 Cal.App.2d 351 [51 Cal.Rptr. 385].) The trial judge clearly stated his legitimate reasons for denying the continuance, saying that he weighed the inconvenience that would result to the court, that the statements might well prove to be inadmissible when produced and that in any event they were of limited value if admissi-

ble; we cannot hold that the trial judge committed error in refusing to grant the continuance. (*People* v. *Wilson,* 235 Cal.App.2d 266, 273 [45 Cal.Rptr. 267] ; *People* v. *Parker,* 235 Cal.App.2d 100, 103 [44 Cal.Rptr. 909] ; *People* v. *Luke,* 233 Cal.App.2d 793, 798 [43 Cal.Rptr. 878].)

█ Appellant also argues that, while the crime of felony drunk driving requires that the person charged must do an act forbidden by law, or neglect a duty imposed by law, in the driving of the vehicle, that essential element of the crime is not supported by sufficient evidence. However, it is a crime to drive faster than reasonably proper in the circumstances. The evidence showed that the defendant was propelling the car at 45 to 50 miles an hour at the intersection of a paved and dirt road which met at right angles, and that, as a result of the speed, the car was wrecked. This was a sufficient breach of the law to bring the defendant within the legitimate ambit of the prosecution.

█ Lastly, it is contended that the trial court committed prejudicial error by not instructing the jury that they could bring in a misdemeanor drunk driving charge as a crime included within the felony charge of drunk driving. The defendant did not request or offer such an instruction, but as a matter of fact the People did. The court refused the proffered instruction. The defendant argues that the court should have given the instruction on its own motion. (*People* v. *Wilson,* 66 Cal.2d 749 [59 Cal.Rptr. 156, 427 P.2d 820].) It must be pointed out that there was no evidence which would have legally justified a conviction of the misdemeanor; all of the elements necessary to convict the defendant of felony drunk driving, if believed, were before the jury, and it was unnecessary to give the instruction now sought by the defendant. (*People* v. *Campbell,* 162 Cal.App.2d 776 [329 P.2d 82] ; *People* v. *Tucker,* 88 Cal.App.2d 333, 341 [198 P.2d 941].)

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.