[S.F. No. 23128. In Bank. Feb. 27, 1975.]

MACK VERNON BUNNELL, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Sylva, Rubnitz, Dinapoli, Hastings, Holden & Livak and Thomas C. Hastings for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**WRIGHT, C. J.**—Petitioner seeks a writ of prohibition to restrain the respondent superior court from proceeding to trial on an information charging him with murder unless it is stipulated that the offense may be no greater than second degree murder. (Pen. Code, §§ 187, 189.)[1] In addition, he seeks a writ of mandate to compel the transfer of the cause to another county pursuant to section 1033 (reasonable likelihood that a fair and impartial trial cannot be had in the jurisdiction). For reasons which appear below we have concluded that he is not entitled to a change of venue but that he may not be tried for an offense greater than second degree murder.

### Double Jeopardy—Former Acquittal

Petitioner contends that a prior proceeding which culminated in his conviction of second degree murder was a trial in which he was in jeopardy of conviction of first degree murder, that he was thereby impliedly acquitted of the greater offense, and that to force him to again stand trial on a charge of first degree murder is to punish him for successfully exercising his right of appeal. The People contend, on the other hand, that petitioner has never been in jeopardy of conviction for first degree murder; that the prior proceedings were not a trial which culminated in an acquittal of that degree of the offense, and that rather than penalizing petitioner for successfully exercising his right of appeal the pendency of the charge reflects the return of the case to the *status quo ante* following the reversal of the earlier judgment. An understanding of these contradictory positions and the issues thus raised necessitates a review of the procedural history of the case, for which purpose we have taken judicial notice of relevant records of the respondent court and of the decision of the Court of Appeal in which the earlier judgment was reversed. (Evid. Code, § 452.)

Petitioner was charged by information with the September 4, 1972, murder of his wife, and with being armed with a knife in the commission of the offense. (§ 12022.) On November 5, 1972, petitioner, his counsel, and counsel for the People, proposed a disposition to the trial court. As explained by petitioner's counsel the case was to be submitted to the court for decision on the basis of the reporter's transcript of the preliminary examination with petitioner reserving the right to testify, the

---

[1]All statutory references are to provisions of the Penal Code except when otherwise specified.

People reserving the right to present certain documentary and physical evidence in rebuttal, and petitioner reserving the right to cross-examine the authors of those documents if necessary for purposes of clarification. The terms of the submission were unusual and ambiguous.[2] The presence of the cause in this court is due in no small part to the failure of the trial court, counsel, and petitioner to achieve a common understanding of the purpose and effect of the submission. It is clear, however, that all participants understood that petitioner would not be convicted of first degree murder.[3]

Petitioner subsequently stipulated to consideration by the court of a

---

[2]As explained by counsel who was then representing petitioner, the proposed disposition was as follows: "In this matter, we have discussed . . . the fact of having a court trial for stipulated to be second degree murder [*sic*] and that would include the 12022, the arming clause; . . . and we have agreed that at that trial, the People would submit the transcript of the Preliminary Examination which was held on the 20th of September and both [the prosecutor] and I were in attendance and I had the opportunity to cross examine the witnesses for the People's prima facie case. That Mr. Bunnell would testify in the defense case. There would be no psychiatrists called by the defense or any other evidence introduced by the defense at that time and [the prosecutor] would reserve for rebuttal to introduce into evidence certain documents being police reports, possibly his investigation report by the District Attorney's investigator and lab reports. Also physical evidence. I would take it he also reserves the right for that, and I reserve that if any of the statements that are contained in there are items that I would like to be able to cross-examine the witness to clarify a point, that I be allowed to ask that the witness be brought in."

The prosecutor acknowledged that this disposition had been agreed to.

[3]When questioned by the judge regarding his understanding of the agreement, petitioner demonstrated confusion. He acknowledged that he understood he was waiving his right to a jury trial, but insisted that he wanted to have a trial and to testify. When he indicated that he did not understand that he would also give up his right to confront and cross-examine witnesses both before a jury and before the court, the judge explained that the court would make a determination of petitioner's guilt or innocence on the basis of the transcript, petitioner's testimony, and the additional reports submitted by the People, but that it would be "a very limited kind of trial." The judge also explained that he had already read the transcript, but had not reviewed the other documents, and that "the agreement is that you wouldn't be found guilty of anything other than second degree murder."

Petitioner acknowledged his understanding, stating: "In other words I won't be tried on first degree murder." After further explanation petitioner expressed his understanding that: "we will have a trial, a court trial but it will be more or less summarized with the main, main testimony on both sides cut down a lot of witnesses." [*Sic.*] The judge agreed that this was an "accurate description of what is going to happen," but also warned petitioner that the "result is already decided" and that he should not "think something is going to happen where I am going to find you not guilty . . . or guilty of manslaughter or something like that."

It appears from the remarks of the judge and the statements of petitioner that notwithstanding petitioner's expressed intent to testify and his repeated declaration that he would have a trial, the judge understood the disposition to be a "slow plea" of guilty to a charge of second degree murder.

transcript of a conversation he had with an investigating police officer shortly after his arrest and he did not personally testify. After reviewing the transcript of the preliminary examination, the documents introduced by the People, and the transcript of the interview, the Court found petitioner guilty of murder in the second degree and further found that he had been armed as alleged in the information.

On petitioner's appeal from the judgment, the Court of Appeal reversed the judgment on the ground that petitioner had believed he would have a trial at which he would testify in his own behalf, but that he had been denied a fair trial because the court had prejudged the case and had already decided that petitioner was guilty of second degree murder before hearing his defense. The People now argue that the opinion of the Court of Appeal is ambiguous and does not hold that the proceedings in the superior court were a trial of the issue of petitioner's guilt rather than what is characterized as a "slow plea" of guilty. Reversal of the judgment would have been proper on grounds that while court and counsel considered the submission to be a slow plea, the record demonstrated as a matter of law that petitioner did not intend to admit his guilt and did not understand the effect of the submission and that therefore his waiver of his rights and his agreement to submit the cause for decision on the reporter's transcript of the preliminary hearing were not voluntary and intelligent. (*People* v. *Gallegos* (1971) 4 Cal.3d 242, 249 [93 Cal.Rptr. 229, 481 P.2d 237].) ■ The Court of Appeal did not base its decision on that ground, however, but held that petitioner did not receive a fair trial. Implicit in that holding is a conclusion that the proceedings did constitute a trial. The judgment became final when the People did not seek further review and the subsequent proceedings which are the subject of the instant petition must be considered in light of that ruling. (*People* v. *Durbin* (1966) 64 Cal.2d 474, 477 [50 Cal.Rptr. 657, 413 P.2d 433].) Further, as we shall explain, whether or not the prior proceeding was a "slow plea," it did constitute a trial for all purposes relevant to the issues now before us.

Neither petitioner nor the People has fully outlined the proceedings in the superior court which followed the issuance of the remittitur. It appears, however, that when the case was again set it appeared on the docket for trial on a charge of second degree murder. New counsel was appointed for petitioner and a jury trial was requested. At the hearing on a subsequent motion for a change of venue the People argued that the case had been returned to the same status it had occupied when the information was filed, i.e., that petitioner stood charged with first degree

murder. The People argued that the prior proceedings had been part of a bargained-for disposition and that if petitioner now wished to withdraw from that bargain by retracting his waiver of jury trial he would have to face a first degree murder charge. In its memorandum of decision denying the motion for change of venue, the court declared that as a consequence of the reversal of the judgment without direction by the Court of Appeal the accusatory pleading stood as if no trial had been conducted and that all stipulations previously entered into had been expunged.

Petitioner thereupon sought leave to enter a plea of former jeopardy (Cal. Const., art. I, § 13, cl. 4; § 1016), asserting that his conviction of second degree murder in the prior proceedings necessarily implied an acquittal of the greater charge of first degree murder. The court rejected the plea and the instant petition followed. ■ Prohibition is the proper remedy to prevent retrial when a defendant has been once in jeopardy. (*Paulson* v. *Superior Court* (1962) 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641].)

■ Although the double jeopardy clause of the Fifth Amendment to the United States Constitution and the standards developed in its application by the United States Supreme Court apply to the states through the due process clause of the Fourteenth Amendment (*Benton* v. *Maryland* (1969) 395 U.S. 784, 795-796 [23 L.Ed.2d 707, 716-717, 89 S.Ct. 2056]), states are not precluded from applying more stringent standards or extending greater protection and California has done so. (See, e.g., Cal. Const., art. I, § 13, cl. 4; § 654; *Curry* v. *Superior Court* (1970) 2 Cal.3d 707 [87 Cal.Rptr. 361, 470 P.2d 345].) We are guided therefore by both the decisions of the United States Supreme Court applying the Fifth Amendment and our own past decisions interpreting the statutes and Constitution of California.

■ Under the related doctrines of double jeopardy and former acquittal, jeopardy attaches when a defendant is placed on trial on an accusatory pleading in a court of competent jurisdiction, and a jury is impaneled and sworn, or, if jury trial has been waived, the trial "entered upon" by the reception of evidence or otherwise. (*Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 376 [93 Cal.Rptr. 752, 482 P.2d 664]; *Curry* v. *Superior Court, supra,* 2 Cal.3d 707, 712.) A defendant who has been convicted of a lesser degree or lesser included offense than that charged in the accusatory pleading is deemed to have been acquitted of the greater charge. He may not be retried for any offense of which he has

been acquitted, whether expressly or impliedly, notwithstanding a subsequent reversal of the judgment on appeal. (*Price* v. *Georgia* (1970) 398 U.S. 323, 329 [26 L.Ed.2d 300, 305, 90 S.Ct. 1757]; *Benton* v. *Maryland, supra,* 395 U.S. 784, 796 [23 L.Ed.2d 707, 717]; *Gomez* v. *Superior Court* (1958) 50 Cal.2d 640 [328 P.2d 976].)

■ A defendant who submits his case for decision on the basis of the transcript of the preliminary examination agrees that the transcript may be considered in lieu of the personal testimony of the witnesses who appeared at the preliminary hearing. His trial is therefore "entered upon" when the stipulation to submit the case is accepted by the court. That acceptance is analogous to the swearing of a witness or the reception of evidence and, for purposes of placing the defendant in jeopardy, has the same effect. This is true whether or not the submission is "tantamount to a plea of guilty" and thus requires that the defendant be advised of the constitutional rights he thereby waives (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]; *People* v. *Gallegos* (1971) 4 Cal.3d 242 [93 Cal.Rptr. 229, 481 P.2d 237]), and irrespective of whether the submission is made pursuant to a bargained-for agreement. Notwithstanding such agreements or the fact that conviction is a foregone conclusion, a submission of the cause for decision on the transcript is a trial.[4]

The People attach unwarranted significance and claim consequences unauthorized by statute to this submission and others which they characterize as "tantamount to a plea of guilty." That phrase was used in *In re Mosley* (1970) 1 Cal.3d 913, 926, footnote 10 [83 Cal.Rptr. 809, 464 P.2d 473], to explain our extension of the *Boykin-Tahl* requirements to submissions in which the guilt of the defendant was apparent on the basis of the evidence presented at the preliminary hearing and in which conviction was a foregone conclusion. if no defense was offered. In *Boykin* v. *Alabama, supra,* 395 U.S. 238, the United States Supreme Court held that a defendant who pleads guilty must be shown to have

---

[4]To the extent that it is inconsistent with our conclusion here, *People* v. *Dorsey* (1973) 34 Cal.App.3d 70 [109 Cal.Rptr. 712], is disapproved. In *Dorsey* the court reasoned that unless a distinction were drawn between a submission which was a bargained-for "slow plea" and convictions had after trial, the defendant whose conviction was reversed because of error in the plea bargain would be placed in a protected position at the second trial. Since even a bargained-for submission is not a plea of guilty, however, recognition that jeopardy attaches when a defendant submits his case for decision on the transcript of the preliminary examination is not unwarranted. That advantage as well as preservation of the right of appeal are legitimate considerations which may encourage such submissions by defendants who may not wish to plead guilty.

done so voluntarily with an understanding of the nature of the offense charged, of the consequences of this plea, and that he thereby waived his rights to trial by jury, to confrontation by adverse witnesses, and against compulsory self-incrimination. We reasoned in *Mosley* that when a defendant submits his case for decision on the basis of evidence presented at the preliminary hearing in circumstances in which conviction is a certainty, the same rule should apply because that defendant surrenders the same important constitutional rights in circumstances in which conviction is as certain as it would have been had he pleaded guilty. In equating such submissions to guilty pleas for this purpose we did no more than recognize that because the same constitutional rights were being surrendered by both classes of defendants it was equally important that both classes of defendants understand the effect of their actions.

We did not purport to hold in *Mosley* that a submission has the same consequences as a guilty plea or that it may be equated to a guilty plea for other purposes, nor could we do so. ■ The permissible pleas and the form in which they must be entered are specified by statute. (§§ 1016-1018.) It follows that a plea once entered remains in effect unless and until the court permits the defendant to withdraw it. An agreement to submit a case for decision on the transcript does not and cannot, therefore, supersede the plea of not guilty which necessarily precedes the agreement.

Many of the consequences which follow the entry of particular pleas are also of statutory or constitutional origin and are not subject to diminution by judicial fiat. ■ Thus a defendant who has entered a plea of not guilty is entitled to the presumption of innocence and to require the People to assume the burden of overcoming that presumption by introducing evidence sufficient to establish his guilt beyond a reasonable doubt. (§§ 1019, 1096.) That the defendant agrees that the People may attempt to do so by the introduction of otherwise inadmissible evidence, i.e., the transcript of the preliminary hearing, or concedes the probability of conviction based on that evidence, in no way affects the People's burden. (*People* v. *Clements* (1962) 202 Cal.App.2d 284, 286 [20 Cal.Rptr. 766].)

■ Similarly, a defendant convicted of a criminal offense has a statutory right to appeal from the judgment unless the conviction is based on a plea of guilty or a plea of nolo contendere. (§§ 1237, 1237.5.) That the conviction followed a submission in no way alters or circum-

scribes that statutory right or affects the scope of available appellate review. (*People* v. *Martin* (1973) 9 Cal.3d 687, 693-694 [108 Cal.Rptr. 809, 511 P.2d 1161].)[5]

█ In summary, the defendant who submits his cause on the transcript does not give up his right to any trial, only to a jury trial, and, unless otherwise specified, to present additional evidence in his own defense. He preserves his right to appeal and to present argument at trial and on appeal regarding the sufficiency of the evidence and its legal significance, and to raise other appropriate issues, irrespective of any "foregone conclusion" or understanding that he will be found guilty. Thus, the characterization of the prior proceedings as a "trial" or, as the People suggest, a "slow plea" is irrelevant to our inquiry.

The People's argument, and the failure of some trial and appellate courts to recognize that submissions are trials even when conviction is certain apparently arise out of our use of the "tantamount to a plea of guilty" language in *In re Mosley, supra,* 1 Cal.3d 913, 926, footnote 10, and our limited extension of the *Boykin-Tahl* requirements to only those submissions in which the defendant acknowledges that conviction was probable. That limitation, of course, followed from the fact that *Mosley* was compelled by *Boykin* v. *Alabama, supra,* 395 U.S. 238, which involved only pleas of guilty. The procedural contexts in which the *Boykin* requirements were first enunciated and in which they have since been found either expressly applicable or appropriate though not compelled (*In re Mosley, supra,* 1 Cal.3d 913; *In re Sutherland* (1972) 6 Cal.3d 666 [100 Cal.Rptr. 129, 493 P.2d 857]; *People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452]; *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561]; *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273]) have tended to obscure the fact that the objectives of those requirements, i.e., assurance that the defendant is aware of his basic constitutional rights, that his waiver is both voluntary and intelligent, and that his decision to waive these rights is made with an understanding of the consequences thereof, are no less important when the defendant surrenders all or substantially all of those rights by a submission in which he contests his guilt by reserving the right to present additional evidence or to present legal argument in defense of the charge.

[5]To the extent that it is inconsistent with this conclusion and with *People* v. *Martin, supra,* 9 Cal.3d 687, 693-694, *People* v. *Pingree* (1974) 37 Cal.App.3d 251 [112 Cal.Rptr. 249], is disapproved.

The distinction heretofore established between submissions that are "tantamount to a plea of guilty" and those in which the defendant actively contests his guilt has also unnecessarily burdened trial courts with the task of attempting to determine in advance of the acceptance of the submission whether guilt is apparent, acknowledged, or contested. We have concluded that in order to relieve trial courts of this burden and in order to give maximum assurance that defendants are fully aware of the significant rights that they surrender in any submission and of the possible consequences thereof, such defendants shall be fully advised of these rights and consequences and that the record shall reflect such advice, waivers, and acknowledgment by the defendant of his understanding of these consequences in all submissions.

Therefore, although some of our requirements are not constitutionally compelled, we have concluded that effective upon the date on which this opinion becomes final, in all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination. It shall also demonstrate that he understands the nature of the charges. Express waivers of the enumerated constitutional rights shall appear. In cases in which there is to be a submission without a reservation by the defendant of the right to present evidence in his own defense he shall be advised of that right and an express waiver thereof taken. If a defendant does not reserve the right to present additional evidence and does not advise the court that he will contest his guilt in argument to the court, the defendant shall be advised of the probability that the submission will result in a conviction of the offense or offenses charged. In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute, registration requirements, if any (e.g., § 290; Health & Saf. Code, § 11590), and, in appropriate cases the possibility of commitment pursuant to Welfare and Institutions Code, sections 3050, 3051, or 6302.

We are satisfied that compliance with these requirements will not unduly burden trial courts, some of which have anticipated most if not all of the requirements set forth herein.[6] The additional burden, if any, will be far outweighed by the benefits of assuring criminal defendants that the full panoply of constitutional and statutory rights provided by

---

[6]See, e.g., Los Angeles Superior Court, Criminal Trial Judges' Benchbook pages 267-274, 279-280.

our system of criminal justice is available to them and by our attempt to insure that any waiver thereof by defendants is both voluntary and intelligent. This practice will also lessen the burden on appellate courts which must now attempt to ascertain by examination of the record whether a submission was "tantamount to a plea of guilty."

■ Although, as explained above, a submission on the transcript is a trial whether or not it is "tantamount to a plea of guilty," is a "slow plea," or is a part of a "bargain" with the prosecutor, that conclusion does not answer the inquiry whether a submission accompanied by an express stipulation by the People that the defendant will be convicted of a lesser degree or lesser offense than that charged in the accusatory pleading places the defendant in jeopardy as to the greater offense.

■ It is settled that jeopardy as to an offense of which a defendant has been convicted continues during appellate proceedings and retrial following reversal of the judgment, but ends as to offenses of which he has been expressly or impliedly acquitted. (*Price* v. *Georgia, supra,* 398 U.S. 323; *Green* v. *United States* (1957) 355 U.S. 184 [2 L.Ed.2d 199, 78 S.Ct. 221, 61 A.L.R.2d 1119].) ■ However, jeopardy attaches only when a defendant is brought to trial on the offense charged in the accusatory pleading. In *Price* the defendant had been charged with and tried for murder, but had been convicted by a jury of voluntary manslaughter. After reversal of the judgment on appeal he was again placed on trial for murder under the original indictment. His plea of *autrefois acquit* was rejected and he was again convicted of manslaughter. Reversing the judgment, notwithstanding the fact that the conviction was for the lesser offense and no greater punishment had been imposed, the court reaffirmed its prior holdings that the Fifth Amendment protection against double jeopardy protects not against being twice punished but against being twice put in jeopardy. The court explained that "the 'twice put in jeopardy' language of the Constitution thus relates to a potential, i.e., the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried." (398 U.S. at p. 326 [26 L.Ed.2d at p. 303].) The court further explained that its decision was based on the reasoning of *Green* v. *United States, supra,* 355 U.S. 184, that when a defendant had been convicted of a lesser offense than that charged, and had thus been impliedly acquitted of the greater charge, "jeopardy on the greater charge had ended when the first jury 'was given a full opportunity to return a verdict' on that charge and instead reached a verdict on the lesser charge." (*Id.,* at pp. 328-329 [26 L.Ed.2d at p. 305].) The court concluded that reversal of the judgment

was required because the defendant may have been prejudiced by retrial on the greater charge, which retrial violated the double jeopardy clause that "is written in terms of potential or risk of trial and conviction, not punishment." (*Id.,* at p. 329 [26 L.Ed.2d at p. 305].)

■■ Applying the rules discussed above in light of *Price* we conclude that petitioner was never placed in jeopardy of conviction of first degree murder. At the time jeopardy attached in his trial, i.e., when the submission was accepted by the court, he was not exposed to the risk of conviction of first degree murder, there has therefore been no implied acquittal of that offense, and the trier of fact has been given no opportunity to find him guilty of first degree murder.

However, the fact that the constitutional doctrine of double jeopardy may not bar prosecution of petitioner for first degree murder on retrial does not end our inquiry. Notwithstanding the fact that the People initially charged petitioner with murder without limitation as to degree, they proceeded to trial on a reduced charge of second degree murder when they stipulated at the outset of the trial that petitioner could be convicted of no greater offense. Penal Code section 1023 provides: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading."

Interpreting that section in *People* v. *Greer* (1947) 30 Cal.2d 589, 597 [184 P.2d 512], we held: "Although section 1023 refers to a situation where the prosecution for the greater offense is first in time, there is no such limitation in the cases. If the defendant is tried first for assault and later for battery, the prosecution for the included offense bars the subsequent prosecution for the greater offense. [Citations.] 'A conviction of the lesser is held to be a bar to [the] prosecution for the greater on the theory that to convict of the greater would be to convict twice of the lesser.' (*People* v. *Krupa* [64 Cal.App.2d 592] at p. 598 [149 P.2d 416].) If this were not the rule, section 1023 could be vitiated by the simple device of beginning with a prosecution of the lesser offense and proceeding up the scale."

In the case before us petitioner was placed in jeopardy on a charge of second degree murder when the court accepted the agreement of the

parties to submit the matter on the transcript accompanied by the People's stipulation that he was to be convicted of no greater offense than second degree murder. Under section 1023, as interpreted in *Greer,* that jeopardy became an immediate bar to a subsequent prosecution of petitioner for the greater offense of first degree murder. If the rule were otherwise a defendant charged with and convicted of a lesser included offense could not appeal without running the risk of a new prosecution for a greater inclusive offense, whereas a defendant charged with the greater offense but convicted only of the lesser offense could appeal without running such risk under the doctrine of implied acquittal. A defendant charged with and tried for the greater offense and thereby deemed more culpable by the prosecutor would receive benefits from a conviction of a lesser included offense followed by a reversal thereof that would be denied to a defendant deemed less culpable whose conviction was reversed following a trial on a charge of only the lesser included offense.

Therefore, although the People are correct in their assertion that the reversal of the prior judgment without directions by the Court of Appeal returned the case for trial on the original accusatory pleading in the posture in which it had been prior to the waiver of jury trial and stipulation to submit the cause on the transcript, it does not follow that petitioner may be tried for or convicted of first degree murder. Thus, although petitioner is no longer bound by his waivers and stipulation, having once been tried for second degree murder he may not now be tried for or convicted of a greater offense.

*Venue*

Petitioner contends that widespread publicity surrounding the death of his wife and subsequent civil suits filed by her heirs, as well as the interjection of the opinion of the Court of Appeal reversing the prior judgment into the June 1974 primary campaign by a candidate for judicial office have created a reasonable likelihood that a fair trial cannot be had in Santa Clara County. His motion for change of venue made pursuant to section 1033 was denied by the superior court and he seeks mandate to compel a change of venue. Mandamus is the proper remedy. (*Frazier* v. *Superior Court* (1971) 5 Cal.3d 287, 289 [95 Cal.Rptr. 798, 486 P.2d 694].)

 It is the duty of the reviewing court to make an independent evaluation of the record and to satisfy itself de novo that the defendant

can receive a fair and impartial trial in the county of original venue or to grant the relief prayed for. (*Frazier* v. *Superior Court, supra,* 5 Cal.3d 287, 293; *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 382 [66 Cal.Rptr. 724, 438 P.2d 372].) Our review of the record in the instant case satisfies us that neither the extent nor the nature of the publicity of which petitioner complains is such that a fair trial cannot be had in Santa Clara County.

In support of his motion petitioner calls to our attention three newspaper articles containing factual reports of the circumstances of the homicide, all published within two days of the event; a follow-up article presenting an official denial of improper police procedure and a councilman's call for an investigation of the reason for the failure of the police to respond to the victim's request for protection after petitioner allegedly threatened her; and two brief notices of the forthcoming funeral services for the victim which recalled the circumstances of her death. All of these articles were published in September 1972, more than two years ago.

In addition petitioner notes two November 1972 newspaper articles reporting that the victim's heirs had filed a lawsuit against the City of San Jose, and another November 1972 article reporting the conviction of petitioner following his first trial; an April 1973 article about the filing of a lawsuit by the estate of the victim; a January 1974 article reporting the reversal of the prior judgment; and, finally, two articles published in February and March 1974 about a contest for the superior court seat occupied by the judge who had presided over the first trial in which the challenger was quoted as having attacked the incumbent's qualifications on the basis of the opinion of the Court of Appeal that the latter had denied petitioner a fair trial.

None of the news stories was of a sensational or inflammatory nature. The reporting was essentially factual. The stories were relatively brief, none more than 12 to 15 column inches and most much shorter. None was accompanied by large headlines denoting a major news story. ■ There is no basis to suppose either that the reports attracted unusual interest in the case at the time they were published, or that, if such interest did exist, it continues to the present. In short, none of the factors which led us to conclude in *Frazier* and in *Maine* that a reasonable likelihood existed that the petitioners in those cases could not receive a fair trial in the counties of original venue is apparent here. The motion for a change of venue was properly denied.

Since in the present case petitioner may be tried for second degree murder, we believe the appropriate remedy is a writ of mandate directing the trial court to grant petitioner's motion for leave to enter a plea of once in jeopardy and to sustain that plea by precluding retrial on a charge of first degree murder.

The alternative writ heretofore issued is discharged. The petition is denied insofar as it seeks to compel a change of venue. Let a peremptory writ of mandate issue directing the superior court to proceed in accordance with the views expressed herein.

Tobriner, J., Mosk, J., Sullivan, J., and Burke, J.,* concurred.

**CLARK, J.**—I dissent. Even if the doctrine of the law of the case precludes us from treating this submission as a "slow plea" (*ante,* p. 600; see generally 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 633 et seq.), this case is at least analogous to those where a conviction based upon a negotiated plea is set aside because of the trial court's failure to obtain constitutionally required waivers.

In *In re Sutherland* (1972) 6 Cal.3d 666 [100 Cal.Rptr. 129, 493 P.2d 857], the defendant pleaded guilty to one count in return for dismissal of the remaining four counts. In setting aside the conviction on habeas corpus, this court ordered all five counts restored to the superior court calendar. "Since by granting relief we are in effect permitting defendant to withdraw his guilty plea, the ends of justice require that the *status quo ante* be restored by reviving the four dismissed counts." (*Id.* at p. 672.) A successful attack upon a guilty plea on direct appeal resulted in a like disposition in *People* v. *Kirkpatrick* (1972) 7 Cal.3d 480, 487 [102 Cal.Rptr. 744, 498 P.2d 992].

The *quid pro quo* here was waiver of petitioner's right to jury trial in return for a stipulation that he would not be found guilty of first degree murder. Petitioner declined the People's offer to reinstate the bargain following reversal of the second degree murder conviction. Therefore, the ends of justice require that the *status quo ante* be restored by reviving the first degree murder charge, unless it is barred by the doctrine of double jeopardy.

The majority correctly concludes the "constitutional" doctrine of

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

double jeopardy does not bar prosecution of petitioner for first degree murder on retrial because "petitioner was never placed in jeopardy of conviction of first degree murder. At the time jeopardy attached in his trial, i.e., when the submission was accepted by the court, he was not exposed to the risk of conviction of first degree murder, there has therefore been no implied acquittal of that offense, and the trier of fact has been given no opportunity to find him guilty of first degree murder." (*Ante,* p. 607.)

However, the majority then holds that section 1023 of the Penal Code, as construed in *People* v. *Greer* (1947) 30 Cal.2d 589 [184 P.2d 512], does bar the first degree murder charge. The sole reason given for this otherwise inexplicable conclusion is that, "If the rule were otherwise a defendant charged with and convicted of a lesser included offense could not appeal without running the risk of a new prosecution for a greater inclusive offense, whereas a defendant charged with the greater offense but convicted only of the lesser offense could appeal without running such risk under the doctrine of implied acquittal." (*Ante,* p. 608.)

The quoted reasoning does not apply here. Defendant could have appealed "without running the risk of a new prosecution for a greater inclusive offense." Had he not repudiated the bargain, defendant after reversal could not be tried for the greater offense. A defendant who avoids prosecution for the greater offense by a bargain and then repudiates it is obviously in a substantially different position on retrial from the defendant who did not repudiate the bargain or the one who did not enter into a bargain but was acquitted of the greater offense.

I further dissent from adding verses—admittedly not constitutionally required (*ante,* p. 605)—to the *Boykin-Tahl-Mosley* litany.

McComb, J., concurred.