[No. A037107. First Dist., Div. Three. Apr. 28, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL A. DAKIN, Defendant and Appellant.

COUNSEL

Denis Honeychurch, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ann K. Jensen and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BARRY-DEAL, J.—Michael A. Dakin (appellant) appeals from a judgment sentencing him to one year in county jail for a violation of Vehicle Code section 23153, subdivision (b) (driving with a blood-alcohol level of 0.10 percent or more and causing bodily injury),[1] entered after he submitted his case on the preliminary hearing transcript. Appellant contends the trial

---

[1] Unless otherwise indicated, all further statutory references are to the Vehicle Code.

court erred in failing to advise him that the submission would require him to waive his privilege against self-incrimination and that the direct consequences of a conviction included a minimum one-year sentence to county jail and a five-year revocation of his driver's license. He also maintains that the evidence was insufficient to support his conviction because it did not show bodily injury. We affirm the judgment.

### Discussion

At the preliminary hearing, Lester Wayne Testerman testified that at approximately 2 p.m. on March 5, 1986, he was driving his pickup truck on Peabody Road in Vacaville. His wife was riding with him. As he slowed for a stoplight, there was a terrific impact to the rear of his vehicle. His head and his wife's head went through the rear window of the pickup and shattered it. Mr. Testerman suffered two cuts on his forehead which were one-half to three-quarters of an inch long, a headache, and a stiff neck. Mrs. Testerman suffered a bleeding nose and a headache. The Testermans did not consult a physician because they felt their injuries were not serious enough to warrant medical attention.

Officer Melvin Bussell testified at the preliminary hearing that he arrived on the scene and found appellant inside his pickup. Appellant told the officer that at the time of the accident he had been driving the pickup 45-55 miles per hour. The speed limit in the area was 45 miles per hour. The officer observed that appellant had a strong odor of alcoholic beverage around him, that his speech was slurred, and that his eyes were bloodshot and his pupils dilated. Officer Bussell concluded appellant might be under the influence of alcohol and arrested him. A blood sample was taken from appellant at the hospital. The toxicology report indicated appellant had a blood-alcohol level of 0.30. Officer Bussell testified that upon contacting the Testermans, he saw no visible injuries to Mrs. Testerman.

The court took judicial notice of documents evidencing appellant's two prior convictions of misdemeanor drunk driving within five years of the violations charged.

Counsel for appellant presented no evidence at the preliminary hearing but did cross-examine two of the prosecution witnesses. Appellant did not testify. The municipal court held appellant to answer in superior court after rejecting counsel's argument that there was insufficient evidence of bodily injury. Appellant then moved to dismiss the information pursuant to Penal Code section 995 on the ground that the evidence of bodily injury was insufficient to support the holding order. The court rejected the argument and denied appellant's motion.

On October 16, 1986, appellant's case proceeded to court trial. The district attorney and defense counsel stipulated to submit the case on the transcript of the preliminary hearing along with the toxicology report and the record of appellant's two prior misdemeanor convictions.

Before accepting the submission, the court directed defense counsel to voir dire appellant regarding the proposed submission. Defense counsel advised appellant of his right to jury trial and of his right to confront and cross-examine witnesses against him, and appellant waived these rights. The trial court advised appellant that he was giving up his right to present any additional evidence or witnesses and that he was giving up his right to testify on his own behalf.

In addition, the trial court informed appellant that the maximum potential punishment he could face would be four years in state prison and incorrectly advised him that a conviction would result in an automatic one-year suspension of his driving privileges. The court also advised appellant that if the case was submitted on the preliminary hearing transcript, he would probably be found guilty, and pointed out that the procedure appellant was stipulating to was sometimes referred to as a slow plea.

The court found appellant guilty of violating section 23153, subdivision (b), and found that the allegations regarding prior convictions were true.[2] It dismissed a section 23153, subdivision (a), charge. Appellant was admitted to probation for five years on various terms and conditions, including serving a sentence of one year in county jail. Appellant filed a timely notice of appeal.

## I. *Bunnell Error*

### A. *The Privilege Against Self-incrimination*

Appellant contends the trial court erred in failing to advise him that the submission on the preliminary hearing transcript would require him to waive his privilege against self-incrimination and that this error requires per se reversal because the submission on the preliminary hearing transcript was a slow plea and therefore "tantamount to a guilty plea."

"It has long been recognized that under the federal Constitution a defendant's plea of guilty to a criminal charge is only valid if it is voluntarily

---

[2] The court found that appellant caused bodily injury to Mr. Testerman, but did not address the injuries of Mrs. Testerman, who suffered a nosebleed and headache. For this reason, we do not discuss her injuries in this opinion. Section 23182 provides for a one-year enhancement for a person convicted of injuring more than one victim in a single accident.

and knowingly made. [Citation.]" (*Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 291 [110 Cal.Rptr. 329, 515 P.2d 273].) In *Boykin* v. *Alabama* (1969) 395 U.S. 238, 242 [23 L.Ed.2d 274, 279, 89 S.Ct. 1709], the United States Supreme Court held that an appellate court may not presume from a " 'silent record' " that a defendant has voluntarily and intelligently waived the constitutional rights which he or she implicitly relinquishes by entering a plea of guilty. The California Supreme Court later construed *Boykin* to require that the record must reveal "on its face" that the trial court, before accepting a guilty plea, expressly advised the accused and obtained his or her waiver of the full panoply of constitutional rights: the rights to trial by jury, to confront and cross-examine witnesses, and against self-incrimination. (*In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449], italics omitted, cert. den. *sub nom. Tahl* v. *California* (1970) 398 U.S. 911 [26 L.Ed.2d 72, 90 S.Ct. 1708].)

It is true that slow pleas have been equated with guilty pleas insofar as the record of either must show explicit advisements and waivers of constitutional rights. (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 602-603 [119 Cal.Rptr. 302, 531 P.2d 1086].) In addition, slow pleas are similar to guilty pleas in that, in both instances, omissions of the self-incrimination advisement and waiver are per se reversible. (*People* v. *Levey* (1973) 8 Cal.3d 648, 652-654 [105 Cal.Rptr. 516, 504 P.2d 452].) However, if guilt is contested after submission on the transcript, the submission does not amount to a slow plea of guilty, and the trial court's failure to advise the defendant is reversible only if it is reasonably probable a result more favorable to the defendant would have been reached if he or she had been properly advised. (*People* v. *Wright* (1987) 43 Cal.3d 487, 493-495 [233 Cal.Rptr. 69, 729 P.2d 260], citing *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Jackson* (1987) 192 Cal.App.3d 209, 216 [237 Cal.Rptr. 373].)

Therefore, our inquiry is whether the submission in this case was a slow plea and thus tantamount to a plea of guilty. In *People* v. *Wright, supra,* 43 Cal.3d at pages 495-497, the Supreme Court set forth explicit guidelines for determining whether a defendant's submission on the preliminary hearing transcript constitutes a slow plea. A slow plea is " '. . . an agreed-upon disposition of a criminal case via any one of a number of contrived procedures which does not require the defendant to admit guilt but results in a finding of guilt on an anticipated charge and, usually, for a promised punishment.' Perhaps the clearest example of a slow plea is a bargained-for submission on the transcript of a preliminary hearing in which the only evidence is the victim's credible testimony, and the defendant does not testify and counsel presents no evidence or argument on defendant's behalf. Such a submission is 'tantamount to a plea of guilty' because 'the guilt of the defendant [is] apparent on the basis of the evidence presented at the

preliminary hearing and . . . conviction [is] a foregone conclusion if no defense [is] offered.' [Citations.]

"Submissions that are not considered slow pleas include those in which (1) the preliminary hearing involves substantial cross-examination of the prosecution witnesses and the presentation of defense evidence or (2) the facts revealed at the preliminary examination are essentially undisputed but counsel makes an argument to the court as to the legal significance to be accorded them. [Citation.]" (*People* v. *Wright, supra,* 43 Cal.3d at p. 496.)

In determining whether a submission is a slow plea, we must assess the circumstances of the entire proceeding. (*Ibid.*) "If it appears on the whole that the defendant advanced a substantial defense, the submission cannot be considered to be tantamount to a plea of guilty. Sometimes, a defendant's best defense is weak. He [or she] may make a tactical decision to concede guilt as to one or more of several counts as part of an overall defense strategy. A submission under these circumstances is not a slow plea, and the trial court is not constitutionally compelled by *Boykin* and *Tahl* to administer the guilty-plea safeguards to assure that the tactical decision is voluntary and intelligent." (*Id.,* at p. 497.)

■ We find the submission on the preliminary hearing transcript in this case was not a slow plea. Here defense counsel cross-examined witnesses at the preliminary hearing. Counsel also presented argument as to the legal significance of the facts when she argued that the evidence of bodily injury was insufficient to support a felony conviction. We disagree with appellant's contention that this argument had previously been twice rejected and that conviction was a foregone conclusion. The argument counsel made was potentially a meritorious defense. The magistrate's ruling in the municipal court was not binding on the superior court, which denied appellant's Penal Code section 995 motion on the basis that the district attorney might present additional evidence of the Testermans' injuries at trial. We note the burden of proof required to survive a Penal Code section 995 motion is considerably lower than that required for a conviction. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) The record contains no reference to any negotiations concerning an agreed-upon disposition of the case. This is a case where appellant's best defense was weak. Although the court advised appellant he would probably be found guilty, it also acknowledged that his attorney was contending that he should be found guilty only of a misdemeanor, rather than a felony. Under these circumstances, appellant's conviction on the charged offenses was by no means a foregone conclusion. This case is one where the facts were undisputed, but the legal significance to be accorded them was disputed. In such

a case, submission on a transcript, with argument to the court that the facts in the transcript do not support a conviction for the charged felony or any felony, is not the equivalent of a plea of guilty. (*People* v. *Wright, supra,* 43 Cal.3d at p. 496.) Because the submission on the preliminary hearing transcript was not the equivalent of a plea of guilty, the failure to give the advisement warrants reversal only if it is reasonably probable a result more favorable to the defendant would have been reached if he had been properly advised. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

### B. *The Direct Consequences of Conviction*

■ Appellant also contends that the court erred in failing to advise him that, if convicted, he would be required to serve a mandatory jail term of one year and would have his license revoked for a mandatory period of five years. He maintains that he was prejudiced by this error because, if he had known of these possible consequences, he would have elected to proceed to jury trial. We agree that the court erred in failing to advise appellant of the minimum term of imprisonment and the license revocation period.

In all guilty plea and submission cases, the court must advise the defendant of the direct consequences of the conviction, including the permissible range of punishment provided by statute. (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 605.) The phrase, "permissible range of punishment," has been interpreted to mean an advisement of the maximum and minimum prison terms that may be imposed upon conviction. (*In re Carabes* (1983) 144 Cal.App.3d 927, 932-933 [193 Cal.Rptr. 65].) Here the court failed to advise appellant of two consequences of this submission: (1) that he faced a minimum sentence of one year in the county jail upon conviction (§§ 23190, 23191), and (2) the mandatory five-year revocation of his license (§ 13352, subd. (a)(6); *Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 605; *People* v. *Salazar* (1979) 96 Cal.App.3d Supp. 8, 15 [157 Cal.Rptr. 834]).

The rule compelling the trial court to admonish a defendant of the consequences of an admission is a judicially declared rule of criminal procedure. Because these advisements are not constitutionally compelled, their omission does not require reversal unless the error is prejudicial to the accused. (*People* v. *Wright, supra,* 43 Cal.3d at pp. 494-495.) A trial court's failure to comply with this judicial rule of criminal procedure requires reversal only if it is reasonably probable a result more favorable to the defendant would have been reached if he had been properly advised. (*Id.,* at p. 495; *People* v. *Watson, supra,* 46 Cal.2d at p. 836; Cal. Const., art. VI, § 13.)

### C. *Appellant Was Not Prejudiced by the Errors*

■ Although the trial court erred in failing to advise appellant that the submission required him to waive his right against self-incrimination and in

failing fully to advise him of the direct consequences of conviction, the record does not show it was reasonably probable the outcome would have been more favorable to appellant if he had been properly advised. (*People* v. *Wright, supra,* 43 Cal.3d at p. 499.) We note, as did the court in *Wright,* that in submission cases the record is often silent as to the prejudicial effect of *Bunnell* error, and it may be inherently impossible to find prejudice on appeal. For these reasons, defendants often attempt to demonstrate prejudice by way of a petition for a writ of habeas corpus. (*Wright, supra,* at p. 495, fn. 4.)

Here there was overwhelming evidence that appellant drove a vehicle when he had a blood alcohol level far in excess of the legal limit and caused bodily injuries. The record does not indicate that appellant was unaware of his privilege against self-incrimination or that he would have acted differently had he been properly advised. Nor does the record indicate that appellant would have changed his strategy if he had been properly advised of the minimum length of sentence and the revocation of his license for five years. Nothing in the record indicates he was not aware of the minimum length of sentence. Appellant did not seek any relief in the trial court on the ground that he had not been properly advised of the consequences of his plea. Accordingly, appellant has shown no prejudice sufficient to warrant reversal of the conviction, and we perceive none.

## II. *Bodily Injury*

■ Appellant further contends the evidence of bodily injury is insufficient to support his conviction of section 23153, subdivision (b), which provides, in pertinent part: "It is unlawful for any person, while having 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver. . . ." He maintains that the term "bodily injury" should be construed to mean "substantial bodily injury." We disagree with appellant's construction of the term "bodily injury."

Both parties rely on *People* v. *Lares* (1968) 261 Cal.App. 2d 657 [68 Cal.Rptr. 144], which is the only case construing the term "bodily injury" as it appears in the felony drunk driving statute. There the defendant was convicted of felony drunk driving resulting in an auto accident causing an injury to a passenger in his car. The passenger suffered an acute back strain which caused him to be hospitalized one night and to miss work for two to three weeks. (*Id.,* at pp. 658-660.) Defendant argued on appeal that the term "bodily injury" used in former section 23101 was too indefinite to be a

ground for a criminal conviction. The appellate court held the point had no merit and stated: "Bodily injury means just what it says—harm or hurt to the body. Common sense requires more for conviction than a 'shaking up' of a person in a car which is in an accident, or fright, or a minor headache; it means very obviously a hurt to the body." The court found that the passenger's back strain was sufficient to meet the definition of bodily injury. (*Lares, supra,* at p. 662.)

Appellant contends the instant case is distinguishable from *Lares* because the Testermans' injuries were very minor, requiring no medical treatment and resulting in no loss of work. He contends these minor injuries should not elevate what would normally be a misdemeanor into a felony punishable by two, three, or four years in state prison.

We note, at the outset, that courts may never substitute their will for that of the Legislature in the guise of statutory construction. (*People* v. *Schoenfeld* (1980) 111 Cal.App.3d 671, 689 [168 Cal.Rptr. 762].) A statute must be read in light of both the objective it seeks to achieve and the evil it seeks to avert. (*Henslee* v. *Department of Motor Vehicles* (1985) 168 Cal.App.3d 445, 452 [214 Cal.Rptr. 249].)

It is well established that the legislative intent underlying our drunk driving statutes is to deter intoxicated drivers and thus reduce the life-threatening hazards caused by them. Recognizing this necessity for strong deterrence, the California Supreme Court recently delineated the "horrific risk posed by those who drink and drive." (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 262 [198 Cal.Rptr. 145, 673 P.2d 732].) "The drunk driver cuts a wide swath of death, pain, grief, and untold physical and emotional injury across the roads of California and the nation. The monstrous proportions of the problem have often been lamented in graphic terms by this court and the United States Supreme Court. [Citations.] As observed in *Breithaupt* v. *Abram* (1957) 352 U.S. 432 [1 L.Ed.2d 448, 77 S.Ct. 408] . . . , '[t]he increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield.' [Citation.] Indeed, in the years 1976 to 1980 there were many more injuries to California residents in alcohol-related traffic accidents than were suffered by the entire Union Army during the Civil War, and more were killed than in the bloodiest year of the Vietnam War. [Citations.]" (*Burg, supra,* at p. 262.)

Each year in California, more than 73,000 people are injured and another 2,500 killed by drinking drivers. (Note, *Review of Selected 1981 California Legislation, Transportation and Motor Vehicles; driving under the influence* [hereafter *Transportation*] (1982) 13 Pacific L.J. 787.) Traffic deaths in the

United States exceed 50,000 annually, and approximately one-half of those fatalities are alcohol-related. (*Burg* v. *Municipal Court, supra,* 35 Cal.3d at p. 261.) Legislation in this area has consistently moved towards increased penalties for those convicted of driving while under the influence. (*Transportation, supra,* 13 Pacific L.J. at pp. 787-788.)

In construing a statute, we must give effect to the " ' ". . . usual, ordinary, import of the language employed in framing them." [Citation.]' [Citation.]" (*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) We therefore agree with the court's conclusion in *Lares* that bodily injury means just what it says. We believe that had the Legislature intended the term "bodily injury" to mean "substantial bodily injury," it would have so specified.

Penal Code section 12022.7, providing for sentence enhancements for one who commits "great bodily injury" in the commission of a felony, defines "great bodily injury" as a significant or substantial physical injury. Appellant here is asking the court to impose a requirement of great bodily injury when the Legislature declined to do so.[3]

Mr. Testerman suffered two cuts to his forehead, as well as a severe headache and stiff neck, resulting from the 45-55 miles per hour collision which caused his head to shatter the rear glass of his pickup truck. We agree with the trial court that Mr. Testerman suffered bodily injury within the meaning of section 23153, subdivision (b).

Had this been appellant's first conviction, the court would have had discretion to impose probation on the condition that he serve a period ranging from five days to one year in the county jail. (§ 23181; *Transportation, supra,* 13 Pacific L.J. at pp. 791-792.)[4] But appellant's minimum one-year sentence in the county jail is a mandatory condition of probation because of his two prior convictions. (§ 23191; *Transportation, supra,* 13 Pacific L.J. at pp. 792-793.)

---

[3] Contrast *People* v. *Caudillo* (1978) 21 Cal.3d 562, 588-589 [146 Cal.Rptr. 859, 580 P.2d 274], in which the Supreme Court concluded that two minor cuts on the victim did not constitute " 'great bodily injury' " as intended by the Legislature for enhancement for the crimes of burglary and rape. In reaching its conclusion, the court reasoned that ordinary usage of the term suggested that, had the Legislature intended not to refer to substantial bodily injury, it would simply have used the term bodily harm. (*Id.,* at p. 578.) Here the Legislature made no distinction between substantial bodily injury and bodily injury.

[4] If appellant had been found guilty of misdemeanor drunk driving (no bodily injuries) with two previous convictions, the court could have imposed probation with the condition that appellant be subject to the prescribed sentence of 120 days to one year in county jail. (§ 23171; *Transportation, supra,* 13 Pacific L.J. at p. 791.)

*Disposition*

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.