[No. F054686. Fifth Dist. Jan. 9, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
EDITH ANN BOWERS, Defendant and Appellant.

## COUNSEL

Peggy A. Headley, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Brian Alvarez and Leanne LeMon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**GOMES, J.**—In December 2001, defendant Edith Ann Bowers was found not guilty by reason of insanity (NGI) of two counts of battery on correctional officers. (Pen. Code, § 4501.5.)[1] The court committed Bowers to the State Department of Mental Health (DMH). In 2005, after waiver of a jury trial, Bowers's commitment was extended to August 16, 2007. We affirmed the order extending Bowers's commitment in *People v. Bowers* (2006) 145 Cal.App.4th 870 [52 Cal.Rptr.3d 74] *(Bowers)*.

On May 8, 2007,[2] Bowers was conditionally released to the Central California Conditional Release Program (CONREP) for outpatient treatment and supervision. In October 2007, CONREP requested Bowers's outpatient status be revoked because she violated the terms and conditions of her release. The court remanded Bowers into the custody of the Madera County Department of Corrections pending a hearing on CONREP's request.

A petition for extended commitment under section 1026.5, subdivision (b) was filed on December 4 alleging that Bowers continued to possess a mental disease, defect or disorder, and by reason of such mental disease, defect, or disorder, represented a substantial danger of physical harm to others. The petition was based on an attached declaration from Jeffrey Zwerin, D.O., medical director at Napa State Hospital (NSH), which incorporated a March 5 hospital case summary.

At the December 13 trial confirmation hearing, Bowers's counsel informed the court she wanted to "waive her right to a hearing." The court explained what that meant: "In this case it would be a jury trial on an extended commitment and agree to an extended commitment and being sent back to Patton for a period of two years." Bowers responded, "Yes." The court took Bowers's waiver of her right to a jury trial, in which her counsel joined. The court asked defense counsel whether "in this case is it going to be by means of submission on the reports or is it going to be by stipulation to the findings that by reason of mental disease, defect or disorder, Miss Bowers represents a substantial danger of physical harm to others?" Defense counsel responded, "Stipulation of the reports I believe, Your Honor." The court explained it would mark as exhibit 1 "for purposes of what would be a Court trial, instead of a jury trial, the report that was filed by Mr. Duarte. And based upon that you understand having read that, I will make the findings as indicated and I will extend your commitment for a period of two years? Okay." Bowers acknowledged that she understood that. The parties stipulated to the admission of a November 16 report by CONREP's community program director,

---

[1] Undesignated statutory references are to the Penal Code.

[2] All further dates are in 2007 unless otherwise stated.

Mark L. Duarte, and its primary clinician/designee Shannon M. Parkinson. Dr. Zwerin's report also was admitted as evidence. The attorneys submitted the matter and "[b]ased upon those reports," the court found by reason of mental disease, defect or disorder Bowers represented a substantial danger of physical harm to others. The court consequently extended her commitment for two years.

The court prepared a written order, which stated that Bowers had agreed to have "the matter determined by the court instead of by means of a jury trial," the parties stipulated the court could admit the two reports into evidence, and "[t]he case was then submitted to the court for decision by the attorneys for both parties." The order further stated that having received the evidence and considered the arguments, the court made factual findings and orders, including that it was established beyond a reasonable doubt that Bowers continues to suffer from a mental disease, defect or disorder and as a result, she represents a substantial danger of physical harm to others and has serious difficulty controlling her dangerous behavior. Finally, the order stated Bowers's prior commitment was extended to December 23, 2009.

On appeal, Bowers contends the order extending her commitment violated due process as the evidence was insufficient to prove that she was a danger to others and could not control her dangerous behavior. The People assert the issue is waived because she stipulated to her recommitment, and even if not waived, substantial evidence supports the court's findings. As we shall explain, we disagree that the issue is waived, but agree substantial evidence supports the court's findings.

## FACTS

*The DMH Report*

Dr. Zwerin stated in his affidavit that he had reviewed Bowers's case and in his opinion, she qualified for extension of her commitment under section 1026.5, in that in her present status and condition, by reason of a mental disease, defect or disorder, Bowers represented a substantial danger of physical harm to others. Based on this, Dr. Zwerin recommended application to the court for an extension of Bowers's commitment. Dr. Zwerin stated his opinion and recommendation were supported by the "recent hospital case summary," which was attached and incorporated by reference.

The hospital case summary, dated March 5, was prepared by a team of five DMH staff members, which included a psychiatrist, a medical doctor, a social worker and a psychologist. The summary related the following information. Bowers, who was 43 years old, had been diagnosed with schizoaffective

disorder, depressed type; alcohol dependence (in institutional remission); and borderline personality disorder. Bowers was committed after becoming violent during a counseling session and injuring a correctional officer. Bowers has a criminal record that includes three convictions for sections 452 and 451, subdivision (d), arson of property/forest land. Bowers stated "she must set fires, 'because the voices tell me to do it and I am helping the country by setting the fires.'" Bowers also has a history of periodic hallucinations commanding her to engage in dangerous acts under the threat of death. Bowers has been hospitalized 26 times for psychiatric reasons, the first time when she was 14 following her first suicide attempt. Bowers has attempted suicide numerous times and reports chronic suicidal ideation, depression, paranoia, and anxiety.

The focus of treatment was to help Bowers gain a better understanding of her mental illness, including its triggers and warnings, in order to develop a comprehensive wellness and recovery plan, which must also adequately address her alcohol dependence. She had progressed over the past six months, as she had remained on the open unit and was attending her assigned groups. Bowers usually adhered to hospital expectations, but at times needed to be reminded of unacceptable behaviors. Although she was less needy, she had periods in which she exhibited a variety of complaints as a way to seek staff attention. She remained free of violence and had not acted in a self-injurious manner over the past six months. Bowers had been largely free of symptoms of psychosis, took her medications willingly, and denied any untoward side effects. Her understanding of her mental illness had improved slightly and she had begun to work on her wellness and recovery plan, which would require "considerable work to be adequately completed." The team was concerned that Bowers did not acknowledge alcohol as being problematic despite having been diagnosed with alcohol dependence. The team noted that because of her denial, she had not addressed the issue in her plan, which would be considered incomplete until she did so, and that her health issues, which included hyperthyroidism, morbid obesity and chronic cigarette smoking, could impact her mental health status. In the team's opinion Bowers, by reason of a mental disease, defect, or disorder, represented a substantial danger of physical harm to others, and therefore the team recommended extension of her commitment.

### The CONREP Report

The CONREP report was prepared by CONREP primary clinician Shannon M. Parkinson, MSW, ACSW, and signed by CONREP community program director Mark L. Duarte, MSW, LCSW. The report relayed the following information. Bowers was diagnosed with borderline personality disorder when she was 13 years old; she subsequently was admitted to the

children's program at NSH. When she was 16, Bowers ran away from the hospital several times and eventually was transferred to a locked ward at the hospital before being released to her conservator's custody pending community placement. Bowers was readmitted to NSH when she was 17 after taking 20 cold medication capsules, and released a month later. After that, Bowers moved in with an older man. During the 17 years she lived with him, she reportedly had 26 psychiatric hospitalizations and attempted to kill herself 12 times by overdosing on pills or cutting herself. Bowers's current diagnoses included schizoaffective disorder, depressed type; alcohol dependence; and borderline personality disorder.

On November 16, 2000, Bowers, who was serving a prison sentence for arson, became upset during a counseling session with the prison psychological social worker and the student intern. When prison officers tried to intervene, Bowers attempted to hit them in the face with a table and then made contact with one officer's face, tore the pocket off his shirt, and pulled him to the ground. Bowers began flailing and kicking the officers, causing injury to an officer's thumb. According to Bowers's statements following the incident, she had been suffering from considerable hallucinations and voices tormenting her. She did not completely recall the attack, but did remember telling the prison psychiatrist she needed her medications changed and that she became very upset when her request was refused. Bowers stated at the time that if they had listened to her, " 'none of this would have happened.' "

When this offense occurred, Bowers was incarcerated for a September 1999 arson, in which she started two grass fires, three trashcan fires, and set fire to a mailbox. Witnesses observed Bowers igniting newspapers with a cigarette lighter and throwing them into trashcans and grassy lots. Bowers stated she set fires " 'because the voices tell me to do it and I am helping the country by setting the fires.' " Prior to this offense, Bowers was arrested in November 1996 for starting a fire in a dumpster. In that case, Bowers pled no contest to unlawfully causing a fire of property, a violation of section 452, subdivision (d). Bowers told her probation officer she did not recall having started the fire and she " 'had a few drinks after an officer had raped her in the Sacramento County Jail.' " Bowers further alleged the officer had " 'sexually abused her' in August 1996 and that she was afraid he would hurt her because he had allegedly been 'stalking her for some time.' "

Bowers's problems were identified as substance or alcohol abuse, withdrawing and failing to disclose information to the clinician or staff, a history of codependent behaviors that lead to added stress, behaviors that lead to mistrust between Bowers, peers and her therapist, and difficulties in interpersonal relationships that lead to negative situations including suicide attempts and/or criminal behavior. Bowers's precursors were identified as any failure

of interpersonal relationships, any alcohol and substance abuse, increased paranoid delusional thinking lasting longer than one hour, auditory or visual hallucinations lasting longer than one hour, increase in agitation, lying, or hypomanic behavior lasting more than 30 minutes, and isolative behavior lasting longer than 12 hours. Treatment goals included return to NSH for further evaluation and treatment, developing commitment to sobriety, and demonstrating personal responsibility for the consequences of her actions.

After Bowers's release to CONREP on May 8, she had numerous contacts with both law enforcement and emergency room staff, and failed to comply with the program. Her first incident of noncompliance occurred on June 7, when she consumed alcohol and called 911 because she felt as if she wanted to hurt herself. She was taken to the emergency room, checked out, and released. On September 12, Bowers failed to check in with CONREP as required and left Fresno County without permission or notifying CONREP. Bowers contacted CONREP on September 15, but would not reveal her whereabouts. Bowers was found to be in a locked acute psychiatric ward in San Jose. She reported that after becoming upset with the CONREP program director she took the train to Oakland, where she called 911 due to suicidal feelings. The police took her to the psychiatric facility in San Jose, where she was admitted. Bowers was returned to CONREP, put on program probation, and notified that if she broke her terms and conditions again revocation would be recommended.

On September 27, Bowers went to a hospital emergency room where she reported that a peer from CONREP had raped her. The hospital notified both the police and CONREP. Bowers told police, her therapist and the CONREP program director that she had gone to a peer's house, talked with him a little, and asked him for a soda. She claimed that after he brought her a soda, he began slapping her hard on her left shoulder, pushed her to the ground, pulled off her pants and underwear, and raped her. The man did not say anything to her during the entire incident and let her walk out of the house afterwards. Bowers said she then drank three 24-ounce beers she bought at a convenience store, and went to the emergency room, where she called the CONREP program director and told him she wanted to kill herself. The program director calmed her down. Bowers said she would be fine for the night and promised to check in with him and her clinician first thing in the morning. The next morning, Bowers left her apartment, telling her roommate she was going to the CONREP office. Instead, she bought one more 24-ounce beer, drank it, wandered around downtown Fresno, and then went to the emergency room, where she reported she had been raped.

The police officer investigating the alleged rape, a CONREP clinician and the CONREP program director spoke with the man Bowers accused of the

rape. The man had an alibi and agreed to submit to DNA testing. Bowers did not have any bruises or marks. Her underwear, which she said would have DNA evidence, was not found in her room where she said it was. The police officer reported that since there was no evidence Bowers had been raped, he would await the results of the sexual assault kit and proceed from there. At the time of the report, there was no evidence to substantiate Bowers's allegation. While in the emergency room awaiting a sexual assault exam, Bowers ingested her entire six-day medication supply. She was given charcoal and kept overnight for her medication levels to be monitored. She was then admitted to the acute inpatient psychiatric unit at Community Behavioral Health Center because she reported suicidal feelings.

In the opinion of Parkinson and Duarte, Bowers was not managing to live in the community lawfully with supervision, structure and support by peers and staff, and had shown she was a danger to herself and others. She inappropriately utilized community resources by frequenting the local emergency room and community psychiatric units instead of discussing her problems with her clinician and CONREP. The report noted Bowers consumes alcohol "reporting that she 'doesn't care' about the consequences." Although Bowers had made numerous suicide threats and attempts, she refused to talk about her feelings relating to these in her therapy sessions. Bowers continued to break the terms and conditions of outpatient treatment and supervision with no obvious thought to the consequences. When asked why she did so, she always responded, " 'I don't know.' "

According to Parkinson and Duarte, Bowers is "very easily disturbed and acts out in self destructive and dangerous ways." She responds well to external control and is in need of a secure treatment facility to regain her equilibrium before returning to the community. They opined that Bowers lacked the insight and skill to navigate the stresses of daily living in the community lawfully, and she did not evidence any actual control of her behavior when on her own. They believed Bowers had been engaging in increasingly dangerous behavior. Bowers had demonstrated her willingness "to say and do whatever she wants, when she wants, and does this to assuage her loneliness and boredom for which she has little insight into more constructive ways to get her needs met." They stated that Bowers was evidencing self-defeating behaviors, which included extreme mood swings, self-injurious acts, obsession with others and making false accusations about others without provocation. These behaviors were "escalating in dangerousness as evidenced by lack of self worth and inability to utilize resources appropriately, and making serious [unsubstantiated] allegations against others . . . ." Although Bowers was capable of learning how to modulate her behavior, she needed to exercise the will to authentically apply herself to sobriety and treat herself with value.

In Parkinson's and Duarte's clinical judgment, Bowers was a danger to herself and others "by her erratic, manipulative, maladaptive behavior which is increasingly high risk." Consequently, they opined Bowers was in need of an extension of her commitment to give adequate time for a continuity of care, without which Bowers would "pose a danger in the community because of her maladaptive attention seeking and self injurious behavior."

## DISCUSSION

Bowers argues that although the evidence may have shown she was a danger to herself, it did not prove she posed a substantial danger of *physical* harm to *others* or that she had serious difficulty controlling behavior that was dangerous to others. Under section 1026.5, subdivision (b)(1), a person found NGI is subject to extended commitments, beyond the maximum period of penal confinement, if "by reason of a mental disease, defect, or disorder [the person] represents a substantial danger of physical harm to others." In addition, there must be proof that a person subject to commitment has "serious difficulty in controlling . . . dangerous behavior." (*Bowers, supra*, 145 Cal.App.4th at p. 878; see also *People v. Galindo* (2006) 142 Cal.App.4th 531, 536 [48 Cal.Rptr.3d 241].)

" 'Whether a defendant "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others" under section 1026.5 is a question of fact to be resolved with the assistance of expert testimony.' [Citation.] 'In reviewing the sufficiency of evidence to support a section 1026.5 extension, we apply the test used to review a judgment of conviction; therefore, we review the entire record in the light most favorable to the extension order to determine whether any rational trier of fact could have found the requirements of section 1026.5(b)(1) beyond a reasonable doubt.' " (*People v. Crosswhite* (2002) 101 Cal.App.4th 494, 507–508 [124 Cal.Rptr.2d 301] (*Crosswhite*).) "A single psychiatric opinion that an individual is dangerous because of a mental disorder constitutes substantial evidence to support an extension of the defendant's commitment under section 1026.5." (*Bowers, supra*, 145 Cal.App.4th at p. 879.)

We first address the People's assertion that Bowers's substantial evidence claim is waived. The People contend the record shows that Bowers stipulated to her recommitment and therefore she cannot now claim there was insufficient evidence to support the trial court's findings. In support of this contention, the People rely on *Crosswhite*, in which the appellate court concluded the defendant waived any contention there was not substantial evidence to support the finding that he continued to pose a substantial physical danger to others where he withdrew his request for trial and

conceded he fell within the provisions of section 1026 for recommitment, which stipulation the trial court accepted. (*Crosswhite, supra*, 101 Cal.App.4th at pp. 500, 507.)

*Crosswhite* is inapplicable here because Bowers did not stipulate to her recommitment. Instead, the record shows that defense counsel submitted the matter on the reports. The court's written order specifically states that Bowers agreed to have the matter determined by the court, the two reports were received into evidence, and the case was then submitted to the court for decision, after which the court made the factual findings necessary to support recommitment. As Bowers points out, in such instances a sufficiency of the evidence claim is not waived. (Cf. *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 604 [119 Cal.Rptr. 302, 531 P.2d 1086] [defendant who submits case on the transcript preserved his right to argue on appeal sufficiency of the evidence].)

Bowers's claim fails, however, because sufficient evidence supports the trial court's findings. By the parties' agreement, the only evidence presented at the extension hearing were the reports of Dr. Zwerin, which incorporated a case summary prepared in March 2007, and Parkinson and Duarte of CONREP. Both reports noted that Bowers had a long history of chronic mental illness. Specifically, Bowers suffers from schizoaffective disorder which caused her to suffer auditory hallucinations which commanded her to hurt herself or others. These hallucinations appeared to have been under control, as Bowers was released to CONREP, an outpatient program. Bowers, however, was unable to comply with the terms and conditions of CONREP— she failed to keep CONREP apprised of her whereabouts, left the county, drank alcohol, attempted suicide at least twice, and used the local emergency room and community psychiatric units instead of discussing her problems with CONREP. Bowers's actions while in CONREP show that she was unable to control her behavior. As stated in the CONREP report, Bowers was willing to say and do whatever she wanted, whenever she wanted, with little insight into more constructive ways of getting her needs met and without regard to the consequences of her actions. Bowers admitted she did not know why she continued to break the terms and conditions of outpatient treatment and that she consumed alcohol without regard to the consequences. This evidence supports the trial court's finding that Bowers had serious difficulty controlling her behavior.

■ Bowers contends there are no facts to show either that her behavior was dangerous or that she posed a substantial danger of physical harm to others. She ignores, however, her past history of assault and arsons. Although Bowers did not engage in these acts while in outpatient treatment, the evidence shows her behavior in the community escalating in seriousness and

dangerousness—from consuming alcohol, to suicide attempts, to making unsubstantiated accusations of criminal behavior by another person. Given her history, which included physically attacking prison personnel and starting fires, and her inability to control her behavior while in a community setting, the CONREP social workers reasonably could conclude, as they did, that Bowers presented a substantial danger of physical harm to others should she remain in the community, as it was only a matter of time before her behavior escalated to the point of physically harming others.

## DISPOSITION

The order is affirmed.

Vartabedian, Acting P. J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 15, 2009, S170590.