Filed 12/30/13  P. v. Stubbs CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039390 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC810198) |
| v. | |
| ANTOINETTE MARIE STUBBS, | |
| Defendant and Appellant. | |

Following a court trial, Judge Cena found Antoinette Stubbs (defendant) guilty of three counts of aggravated sexual assault on a child under 14 years of age and seven or more years younger than the defendant (Pen. Code, § 269, count one oral copulation, count seven oral copulation, and count eight rape), three counts of committing a lewd or lascivious act on a child by force, violence, duress, menace or fear (§ 288,[1] subd. (b)(1), counts two, three and four), one count of abusing or endangering the health of a child (§ 273a, subd. (a), count five) and one count of engaging in three or more acts of substantial sexual conduct with a child under 14 years of age—resident child molesting (§ 288.5, subd. (a), count six).  The court found true the allegation that defendant's prior conviction for robbery constituted a strike within the meaning of sections 667, subdivisions (b)-(i), and 1170.12 and was a serious felony within the meaning of section 667, subdivision (a).

_____

[1]     All unspecified section references are to the Penal Code.

Subsequently, on January 4, 2013, the court found defendant not guilty by reason of insanity as to each of the foregoing eight counts. On February 21, 2012, the court ordered that defendant be committed to the California Department of Mental Health for treatment in a state hospital pursuant to section 1026;[2] the court set defendant's maximum term of confinement as 90 years to life consecutive to 80 years.

On March 7, 2012, defendant's trial counsel filed a timely notice of appeal.

Defendant's appointed counsel has filed an opening brief in which no issues are raised and asks this court for an independent review of the record as required by *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Counsel has declared that defendant was notified that no issues were being raised by counsel on appeal and that an independent review under *Wende* was being requested.

On August 30, 2013, by letter, we notified defendant of her right to submit written argument on her own behalf within 30 days; the letter was returned. Accordingly, on September 19, 2013, again, we notified defendant of her right to submit written argument

---

[2] Section 1026, provides as relevant here, "(a) When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, the defendant shall first be tried as if only such other plea or pleas had been entered, and in that trial the defendant shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury in the discretion of the court. In that trial, the jury shall return a verdict either that the defendant was sane at the time the offense was committed or was insane at the time the offense was committed. If the verdict or finding is that the defendant was sane at the time the offense was committed, the court shall sentence the defendant as provided by law. If the verdict or finding be that the defendant was insane at the time the offense was committed, the court, unless it shall appear to the court that the sanity of the defendant has been recovered fully, shall direct that the defendant be confined in a state hospital for the care and treatment of the mentally disordered or any other appropriate public or private treatment facility approved by the community program director, or the court may order the defendant placed on outpatient status . . . ."

on her own behalf within 30 days. That time has passed and we have not received a response from defendant.

Pursuant to *Wende*, *supra*, 25 Cal.3d 436, we have reviewed the entire record and have concluded there are no arguable issues on appeal. Pursuant to *People v. Kelly* (2006) 40 Cal.4th 106, we provide "a brief description of the facts and procedural history of the case, the crimes of which the defendant was convicted, and the punishment imposed." (*Id*. at p. 110.)

*Facts and Proceedings Below*

The Santa Clara County District Attorney charged defendant by amended information filed on December 9, 2009, with three counts of aggravated sexual assault on a child under 14 years of age and seven or more years younger than the defendant (§ 269, counts one, seven and eight), three counts of committing a lewd or lascivious act on a child by force, violence, duress, menace or fear (§ 288, subd. (b)(1), counts two, three and four), one count of abusing or endangering the health of a child (§ 273a, subd. (a), count five) and one count of engaging in three or more acts of substantial sexual conduct with a child under 14 years of age—resident child molesting (§ 288.5, subd. (a), count six). The information contained an allegation that defendant's prior conviction for robbery was a prior strike (§§ 667, subds. (b)-(i), 1170.12) and a serious felony (§ 667, subd. (a)).

On June 1, 2010, defendant pleaded not guilty by reason of insanity; the court appointed doctors to evaluate defendant pursuant to section 1026.[3] After several continuances, and following receipt of the doctors' reports, defendant waived her right to a jury trial and the case was set for a court trial as to both guilt and sanity on May 29, 2012. On October 22, 2012, defendant was advised of her constitutional rights,

---

[3] Appellate counsel has not provided this court with the reporter's transcript of the hearing at which defendant entered her plea of not guilty by reason of insanity.

3

personally waived those rights and the parties entered into a *Bunnell* submission.[4] On

December 6, 2012, the court found defendant guilty as charged and found true the prior

conviction allegations.

Subsequently, after reviewing the evidence submitted by defense counsel relating

to defendant's sanity at the time of the offenses, as noted the court found defendant not

guilty by reason of insanity as to all counts. The court referred defendant to South Bay

CONREP for an evaluation in order to facilitate a recommendation on defendant's

placement.[5]

### Defendant's Court Trial

The prosecution submitted a binder of materials to the court, which included the

preliminary hearing transcript, a stipulation regarding the victim's testimony, the police

---

[4] A *Bunnell* submission (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 602 (*Bunnell*)), is also known as a "slow plea." "A slow plea is defined as a submission of the guilt phase to the court on the basis of the preliminary hearing transcripts that is tantamount to a plea of guilty because guilt is apparent on the face of the transcripts and conviction is a foregone conclusion if no defense is offered." (*People v. Sanchez* (1995) 12 Cal.4th 1, 28, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) In *Bunnell,* the California Supreme Court held that a stipulation to submit a case for decision on a preliminary hearing transcript must be accompanied by advice concerning, and the defendant's personal waiver of, the constitutional rights to jury trial, to remain silent, and to confront and cross-examine witnesses, i.e., *Boykin- Tahl* advice and waivers. Express advisements and waivers had to appear in the record. In addition, if the defendant did not reserve the right to present additional evidence and did not advise the court that he or she would contest guilt in argument to the court, the defendant had to be advised of the probability that the submission would result in a conviction of the offense or offenses charged. (*Bunnell, supra,* 13 Cal.3d at p. 605.)

[5] Subdivision (b) of section 1026 provides as relevant here, "Prior to making the order directing that the defendant be confined in a state hospital or other treatment facility or placed on outpatient status, the court shall order the community program director or a designee to evaluate the defendant and to submit to the court within 15 judicial days of the order a written recommendation as to whether the defendant should be placed on outpatient status or confined in a state hospital or other treatment facility. No person shall be admitted to a state hospital or other treatment facility or placed on outpatient status under this section without having been evaluated by the community program director or a designee."

reports in the case, nine photographs of the victim and certified copies of the record of defendant's prior conviction for robbery. Exhibit No. 2, a stipulation between the parties concerned the victim's preliminary hearing testimony. In full, the parties stipulated that "on February 25, 2008, [the victim] described the following dates as it relates to the charges in the information: [¶] 1) Count 8 (rape while handcuffed) occurred on May 25, 2005. [¶] 2) Counts 2, 3, 4, and 6 (fondling and masturbation in the bathroom) occurred when [victim] was aged 12 and 13. [¶] 3) Count 7 (forced oral copulation in bathroom after being struck in the stomach) occurred when [victim] was 13 years old and in the eighth grade."

*Testimony Adduced at the Preliminary Hearing*

John Doe,[6] defendant's son, lived with defendant and his younger brother until 2007 when John was 14 and in ninth grade. The family lived in a three-bedroom apartment in San Jose. John said that he had not lived with his mother since the second semester of his freshman year in high school. At the time of the preliminary examination John was 16 years old. John testified that his mother was much stronger than him and was able to overpower him.

*Count One—Aggravated Sexual Assault Involving Oral Copulation*: On one occasion while John was in his bedroom, defendant came into his room, put her mouth around his penis and orally copulated him; John could not remember if he was in seventh or eighth grade when this happened.

*Counts Two, Three and Four—Lewd or Lascivious Acts*: When John lived with his mother he was allowed to take a shower by himself, but he was not allowed to lock the bathroom door. On multiple occasions, defendant would walk in, undress, get in the shower with John and touch his chest and thighs, and stroke his penis. Sometimes John would try to jump out of the shower, but he was unable so to do because his mother was

---

[6] We refer to the victim in this case as John Doe to protect his anonymity.

in the way. John would tell his mother to stop, but she would not say anything, although sometimes she mumbled incomprehensibly. These incidents occurred once or twice a week starting when John was in sixth grade.

*Count Five—Child Endangerment*: During one incident John fell from the second floor of the apartment down to the first floor and hit his head. John, defendant, and John's aunt were arguing and John was hit in the head by something and fell from the stairs; his aunt told him that his mother had hit him. John recounted various incidents that occurred throughout his childhood when defendant would punch him in the stomach.[7]

*Count Six—Continuous Sexual Abuse*: John testified that on approximately four occasions when he was in seventh grade, defendant would come into his bedroom while he was sleeping and touch his penis until he ejaculated.[8]

*Count Seven—Aggravated Sexual Assault Involving Oral Copulation*: On one occasion John tried to lock the bathroom door, but defendant shouted at him not to so do. She came into the bathroom and punched John, which caused him to fall down. Defendant orally copulated John.[9]

*Count Eight—Aggravated Sexual Assault Involving Rape*: John said that he had a set of handcuffs with which he used to play. Eventually, defendant took them away from him. On one occasion, defendant handcuffed him to her bed. Defendant took off John's pants

---

[7] John told a Detective Martinez that after one of the incidents of sexual abuse he tried to commit suicide by jumping off the roof so he did not ever have to see his mother again.

[8] John told Detective Martinez that on some occasions he would wake up to find defendant lying in bed with him; he noticed that he had ejaculated during the night. This happened more than 10 times.

[9] John told Detective Martinez that defendant elbowed him in the stomach and knocked him to the floor and that it was while he was lying on the bathroom floor trying to catch his breath that his mother orally copulated him and as a result he ejaculated. During the preliminary hearing, John said that his mother punched him in the cheekbone.

and boxers and he got an erection.  Defendant, who was naked, got on top of John and put John's penis into her vagina.[10]

*Sanity Phase*

Before the preliminary hearing in this case, defendant was found not competent to stand trial.  Subsequently, she was restored to competency before the preliminary examination.  At the sanity phase of defendant's trial, defense counsel submitted reports from several doctors regarding defendant's sanity at the time of the offenses.  As noted, after reviewing these documents the court found by a preponderance of the evidence that defendant was legally insane at the time of the offenses.[11]

Upon our independent review of the record, we conclude there are no meritorious issues to be argued, or that require further briefing on appeal.  We have closely examined the trial court's colloquy with defendant and her counsel and find that she was aware of, and voluntarily and intelligently waived her rights not to incriminate herself, and to confront and cross-examine witnesses.  Further, the court informed defendant of the

---

[10]      John told Detective Martinez that an incident involving rape occurred once when he came home late.  His mother grounded him, then two hours later she called him into her bedroom, handcuffed him, pushed him down on the bed, took off his clothes and "started to rape" him.  Defendant left to use the bathroom and he dislocated his shoulder in an attempt to get his hands in front of him.  When his mother returned to her bedroom, he ran out and returned to his room, found the key to the handcuffs and left the house.

[11]      After examining defendant in December 2011, Dr. William Lynch concluded that defendant had an I.Q. of 74, putting her in the 4th percentile.  She was diagnosed with bipolar disorder, post traumatic stress disorder and polysubstance abuse; she had at least three documented suicide attempts.  Defendant was prescribed numerous medications for her mental illnesses.  On most cognitive tests, defendant's abilities appeared significantly reduced in a number of areas.  Results of her personality testing were consistent with her mental health diagnoses.  Based on all his testing and review of police reports, medical and psychiatric records, and previous psychological evaluations conducted by Martin Williams, Ph. D. and Brent Hughey, Ph. D. and Drs. Missett's and Cassini's reports, Dr. Lynch concluded that at the time of the offenses defendant was "suffering from multiple mental disorders-principally, bipolar disorder and PTSD-along with sequelae of previous head trauma, and that these conditions combined to prevent her from fully appreciating the rightfulness/wrongfulness of the acts in question."

probability that the submission would result in a conviction of the offense or offenses charged. Moreover, the court advised defendant that due to her initial plea, if the court found her not guilty by reason of insanity, she could be committed to a state hospital until her sanity was restored; and if she was never restored to sanity she could be there for the rest of her life. At all times, defendant was represented by competent counsel.

*Disposition*

The judgment (order committing defendant to the California Department of Mental Health) is affirmed.


_____

ELIA, Acting P. J.


WE CONCUR:




_____

MIHARA, J.




_____

GROVER, J.