Filed 8/19/25  P. v. Traughber CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TOMMY ANTHONY TRAUGHBER,<br><br>    Defendant and Appellant. | 2d Crim. No. B332457<br>(Super. Ct. No. F240517001)<br>(San Luis Obispo County) |

This is the second appeal from a postjudgment order denying appellant's petition for resentencing (Pen. Code, § 1172.6)[1] after he was convicted of first degree murder and other crimes.  Following an evidentiary hearing, the trial court denied appellant's petition for resentencing on the basis that he was a major participant who acted with reckless indifference to human life.  Appellant raises two issues: (1) the trial court erred in determining double jeopardy did not attach at the outset of the

---

[1] All further statutory references are to the Penal Code.

hearing based on the prosecutor's agreement to "not true" findings on the special circumstance allegations at the time of his waiver in 1997; and (2) substantial evidence does not support the trial court's findings that he was a major participant and acted with reckless indifference to human life.  We affirm.

*Procedural Background*[2]

In 1997, appellant was convicted of murder (§ 187, subd. (a)), second degree burglary (§ 459) and arson (§ 451, subd. (d)) with a firearm enhancement (§ 12022, subd. (a)(1)).  Appellant submitted on the preliminary hearing transcript, which showed that appellant (age 17) and his cohort, Travis Ron Williams (age 15), were involved in a home-invasion burglary.[3]  The victim, Mabel Agueda, a 75-year-old widow, was shot in the back of the head.  It was a one-gun, one-bullet killing.  Appellant said Williams was the shooter.  Williams said appellant was the shooter.  Appellant, like Williams, was sentenced to 26 years to life in state prison.  We affirmed the conviction in an unpublished opinion but modified the judgment to add a $5,000 restitution fine pursuant to section 1202.45.  (*Traughber I, supra,* B115844.)

---

[2] The facts, circumstances, and history of the case are found in *People v. Traughber* (Oct. 26, 1998, B115844) [nonpub. opn.] (*Traughber I*).)  This procedural background is summarized from our prior appellate opinion, *People v. Traughber* (Nov. 17, 2020, B301557) [nonpub. opn.] (*Traughber II*)).

[3] Appellant entered a "slow plea" in which the defendant submits on the preliminary hearing transcript and the submission is both a plea and a trial.  (Cal. Criminal Law: Procedure and Practice (Cont. Ed. Bar (2020) § 28.20, pp. 804-805; *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605-606.)

In 2019, appellant filed a petition for resentencing pursuant to section 1172.6 (former § 1170.95). The trial court denied the petition without an evidentiary hearing. We reversed the denial and remanded the matter with directions for the trial court to issue an order show cause and to hold an evidentiary hearing. (*Traughber II*, *supra*, B301557.)

*Section 1172.6 Evidentiary Hearing*

On remand, the trial court conducted a three-day, joint evidentiary hearing. The Prosecution presented numerous witnesses and exhibits, including the transcript of the joint preliminary hearing. Appellant presented various exhibits and relied on expert testimony of Dr. Paul Elizondo, a child adolescent and forensic psychologist.

Prosecution Evidence

Around 2:00 a.m. on October 1, 1995, Arroyo Grande Police Department Officer Barry Bridge discovered a car fully engulfed in flames. The car's license plate was traced to Agueda and her deceased husband.

When police went to Agueda's home, they saw the garage door was partially open a couple of feet. The rear door of the house was ajar, and the doorjamb was shattered as if it had been kicked in. Officers discovered Agueda dead inside the residence. She was seated in a recliner. Her purse was on the floor next to her. The television was on, and her car keys were missing. Officers discovered at least eight firearms in the home and ammunition was scattered everywhere.

Dr. Joseph Cohen, a forensic pathologist, reviewed the death investigation material from the autopsy conducted by Dr. Armond Dollinger in 1995, who was deceased at the time of the section 1176.2 hearing. Dr. Cohen opined Agueda's cause of

3

death was a gunshot wound to the head.  The size of the entrance wound was consistent with a small caliber bullet.  The areas of discoloration indicated a "close range of fire."  In other words, the muzzle of the gun was within inches of the scalp when the gun was fired.

Vanessa Campbell-Andrews, an investigator with the City of Arroyo Grande, learned that two possible suspects, appellant and Williams, were enroute to the police station.

While appellant and Williams were at the police station, police went to Williams's residence with a search warrant.  They found a Smith and Wesson .22-caliber semiautomatic firearm located on top of a sofa in the backyard.  The registered owner of the firearm was Williams's stepfather, who usually stored the firearm inside a gun safe in his wife's locked bedroom.  The sofa was positioned over a hole in the ground, which contained a backpack and duffel bag.  The backpack contained several items, including 13 boxes of ammunition, approximately 200 rounds of loose ammunition, a flashlight, two sets of gloves, and a knife.  The duffel bag contained several items, including about 50 boxes of ammunition.

At the residence, Investigator William Hanley spoke to Williams's brother Todd Williams.  Todd told Hanley that Williams and appellant had been in the garage earlier that evening and were gone between 9:00 p.m. and 9:30 p.m.  Sometime between 10:00 p.m. and 10:30 p.m., Todd went outside and saw Williams and appellant.  The sofa had been moved to cover the hole in the yard.  Todd saw a .22-caliber handgun on the sofa and immediately recognized it as his mother's gun.  Todd told Hanley that appellant stated in a matter-of-fact manner that he and Williams had just returned from a lady's house, they stole

4

her car, and shot her twice in the head. Todd told Hanley that his mother always kept the gun in the locked gun cabinet, and it was obvious Williams had gone into it and retrieved the gun. Todd also said appellant admitted setting the car on fire.[4]

Appellant provided several statements to police. He initially told police he borrowed a friend's car, picked up some girls, and stopped at a few liquor stores. As they cruised around looking to buy alcohol, they were stopped by Grover Beach Police. After a brief detention, appellant, Williams, and one of the girls who was with them was released.

Appellant later admitted that he and Williams went to the victim's house to get bullets from the garage but claimed he did not shoot the victim. He said after they got the bullets out of the garage, he told Williams to "Come on. Let's go." But Williams wanted to go inside. Appellant said it was still early, that [Agueda] was still awake and probably called the cops. Williams ignored appellant so he walked to the front of the house and sat on the curb. Appellant heard a bang a few minutes later and Williams came running out. Williams had the keys to the victim's car. Appellant admitted they cruised around in the car, but said it was Williams who drove to Los Berros Road and set the car on fire.

Defense Evidence

Appellant challenged the lack of gunshot residue from the test kits of both appellant and Williams and footwear impressions

---

[4] At the evidentiary hearing, Todd testified that he did not remember making the statements attributed to him by Investigator Hanley. He also denied observing or handling a firearm on the night of the murder, and denied having a conversation with Williams about hiding the gun.

taken from inside the home that did not match appellant's foot size.

Dr. Elizondo testified about the brain development of juveniles and the hallmark features of youth, which include immaturity, impulsivity, and failure to appreciate risks and consequences.

Appellant also presented the reporter's transcript from the bench trial conducted in 1997. The transcript included the prosecutor's statements advising appellant of the terms and consequences of the slow plea agreement as follows: "Now, has anyone made any promises or representation to you other than what's been stated in order to get you to enter these waivers, other than the fact that you'll be found guilty of Count I, murder, enhancement 2, the arming, the second-degree burglary of the garage, and the arson of the car, *that the remaining charges and enhancements will be found not true*, that at the time of sentencing, you would be sentenced to 26 years to life in state prison, and that you will have preserved your right to appeal the trial court's ruling in the [section] 402 hearings that we've had concerning your statements to Detective Campbell, Investigator Hanley, and the next day to Sergeant Wolfing?" Appellant answered, "Yes." The trial prosecutor clarified, "Okay. So . . . what I've just outlined are all the promises that have been made to you?" Appellant again answered, "Yes." (Italics added.)

Referring to the reporter's transcript, counsel for appellant argued that "pursuant to the plea bargain . . . in order to get his waivers[,] [the prosecutor] promised the special circumstances would be found not true." Counsel stated, "I've got to be candid with the Court, the trial judge at the time never struck the special circumstances, never did anything . . . ." Counsel

explained, "technically, it wasn't a dismissal." Counsel argued, "There is legally a huge difference between not true and dismissed. The case law says not true means the People can't win a 1437," except under certain exceptions.

The trial court replied, "I'm not accepting your argument applies here," but indicated it would permit the parties to present further argument on that issue.

After the hearing, the parties submitted additional briefing addressing the evidence presented. Appellant reraised the argument that he was entitled to relief pursuant to section 1172.6, subdivision (d)(2) and asserted that the evidence did not prove beyond a reasonable doubt that he was a major participant who acted with reckless indifference to human life. The People filed supplemental briefing in opposition.

*The Trial Court's Ruling*

At the close of the evidentiary hearing, defense counsel asked the trial court to enforce the representation made by the People in 1997, that the special circumstance allegations would be found "not true," pursuant to "law of the case" and "contract law."

The trial court rejected appellant's assertion that it was foreclosed from concluding that he was a major participant who acted with reckless indifference to human life based on the prosecutor's comments that the felony murder special circumstance allegations would be found not true. The trial court explained, "In the end, these matters, as I have already mentioned, were not subject to the crucible of a true trial, a jury trial or court trial. That court trial that occurred, occurred in a way—in an effort to effectuate a negotiated disposition. It was not the result of a fact finder reaching conclusions based on a

7

fulsome presentation of [the] evidence.  We now have that, albeit it's an effort that's being made 28 years later."

Thereafter, the trial court denied the petitions for resentencing.[5]  It explained that even if appellant was not the actual shooter, he was a major participant who acted with reckless indifference to human life based on his own statements and the overall circumstances of the crimes, including: actively planning and executing the crimes; going to the victim's house at night, the lights were on and the victim's car was there, which indicated someone was present in the home; entering the victim's garage and stealing ammunition; appellant was also armed with a hunting knife and knew Williams had taken possession of the firearm.

The trial court did not find appellant's statement that he was at the curb when the shooting occurred to be the "least bit credible."  Rather, it determined that appellant "actively participated in the crime[s]" and knew the victim was at least shot, if not killed.  He proceeded to drive the car, along with the stolen property, and help Williams hide the ammunition. Appellant and Williams drove the victim's vehicle, picked up girls, and tried to get alcohol.  Appellant later took an active role in burning the car based on his singed eyelashes and eyebrows.

The trial court considered appellant's youth at the time of the crimes but found it did not negate his reckless indifference. As the trial court explained, "[e]ven a 17-year-old would and should know that taking deadly weapons to a residence at night to steal ammunition is dangerous and could lead to loss of life."

---

[5] We affirmed the denial of codefendant Williams's petition for resentencing in an unpublished opinion.  (*People v. Williams* (Apr. 14, 2025, B332652) [nonpub. opn.].)

*Section 1172.6*

Section 1172.6 "provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*).) "In most cases where the petitioner has made a prima facie case for relief, the trial court must issue an order to show cause and hold a hearing to determine whether the petitioner is entitled to resentencing." (*People v. Flint* (2022) 75 Cal.App.5th 607, 613 (*Flint*).)

However, section 1172.6, subdivision (d)(2) sets out two scenarios when a hearing is not necessary: (1) where the parties "waive a resentencing hearing and stipulate that the petitioner is eligible" for resentencing, or (2) if "there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony." (*Ibid*.) "'In the latter case, the [trial] court must bypass a hearing pursuant to section 1172.6, subdivision (d)(3) and proceed directly to vacatur and resentencing.'" (*People v. Garcia* (2023) 93 Cal.App.5th 416, 422 (*Garcia*); *People v. Guillory* (2022) 82 Cal.App.5th 326, 332 (*Guillory*).)

*There Was No Prior Finding that The Felony-Murder Special Circumstance Allegations Were Not True*

Appellant contends the trial court's failure to vacate his murder conviction and resentence him pursuant to the streamlined process described in section 1172.6, subdivision (d)(2) violated his double jeopardy rights. He contends that the waiver of his constitutional rights was premised on the trial prosecutor's assertion that the special circumstance allegations pursuant to section 190.2, subdivision (a)(17) would be found "not true," which was equivalent to an "acquittal."

9

Appellant relies on the majority opinion in *People v. Clayton* (2021) 66 Cal.App.5th 145 (*Clayton*), which held that "the jury's unanimous rejection of the special-circumstance allegation establishes the petitioner's entitlement to relief under section [1172.6] as a matter of law." (*Id.* at pp. 149, 154-159.) Appellant urges this court to interpret the prosecutor's statement regarding the "not true" findings "no different[ly] than such a finding by either a jury or the court in a court trial" as required by the statute. The prosecutor's statement is not the equivalent of a jury's factual finding.

Appellate courts have construed a "not true" finding of a felony-murder special circumstance allegation following a court or jury trial as a "finding" pursuant to section 1172.6, subdivision (d)(2). (See *Flint, supra*, 75 Cal.App.5th at pp. 613-614; *People v. Harrison* (2021) 73 Cal.App.5th 429, 439-442; *Clayton, supra*, 66 Cal.App.5th at pp. 149, 154-159.) However, "[a] negative finding on a special circumstance allegation does not entitle a petitioner to resentencing where the petitioner 'could be convicted under other, still valid theories of murder.'" (*Garcia, supra*, 93 Cal.App.5th at p. 425, quoting *Guillory, supra*, 82 Cal.App.5th at p. 333.) That is the case here.

We conclude there was no prior finding sufficient to trigger the application of section 1172.6, subdivision (d)(2), and we decline to construe the prosecutor's statements to that effect.

Appellant disagrees and contends the prosecutor should be bound by her agreement because "'[a] plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound.'" (Citing *People v. Stamps* (2020) 9 Cal.5th 685, 700.) He reasons that the "'not true' language used by the prosecutor, rather than 'dismissal,' implied

her belief in the inability to resolve the factual elements of the special circumstance allegations, and thus, an acquittal of those allegations."

But "'[t]he court should accord an interpretation which is reasonable [citation] and which gives effect to the intent of the parties as it may be interpreted from their entire agreement . . . .'" (*People v. Haney* (1989) 207 Cal.App.3d 1034, 1039; *People v. Shelton* (2006) 37 Cal.4th 759, 767.)

Here, defense counsel indicated his understanding of the slow plea agreement on the record, stating that: "All the special circumstances will be dismissed, leaving count I as a felony murder, which will make it only possible for [appellant] to receive 25 to life on that count." Counsel also informed the trial court that, "You won't have to make a determination pursuant to . . . 190.5."[6] Counsel further stated that while the second degree burglary and arson counts would be "maintained," the auto theft count and the "[personal] use allegation" both would be "dismissed." Counsel stated, "[I]n the end . . . [appellant] would stand convicted of a first-degree felony murder, second-degree burglary, arson, and [an armed principal] allegation."

Based on the entire record of the slow plea agreement, and given the absence of any findings by the trial court on the special circumstance allegations, the more reasonable interpretation of the trial prosecutor's statement in this case is that the enhancements that were not the subject of the bench trial would be "dismissed."

---

[6] Section 109.5, subdivision (c) provides: "The trier of fact shall determine the existence of any special circumstance pursuant to the procedure set forth in Section 190.4."

11

Finally, courts have uniformly concluded that the sentence modification procedure pursuant to section 1172.6 does not implicate double jeopardy concerns.  (See *People v. Hernandez* (2021) 60 Cal.App.5th 94, 111, abrogated on other grounds by *Lewis*, *supra*, 11 Cal.5th at pp. 961-965; accord, *People v. Harris* (2024) 105 Cal.App.5th 623, 643 & fn. 9; *People v. Hill* (2024) 100 Cal.App.5th 1055, 1067-1068; *People v. Schell* (2022) 84 Cal.App.5th 437, 444-445; *People v. Perez* (2022) 78 Cal.App.5th 192, 205; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 588; *Flint*, *supra*, 75 Cal.App.5th at p. 618; *People v. Myles* (2021) 69 Cal.App.5th 688, 704.)

Accordingly, the trial court did not err in determining that double jeopardy did not attach at the evidentiary hearing.

*Substantial Evidence Supports the Trial Court's*
*Major Participant/Reckless Indifference Findings*

Appellant next contends substantial evidence does not support the trial court's findings that he was a major participant who acted with reckless indifference.

Section 1172.6, subdivision (d)(3) provides that at the evidentiary hearing on a petition for resentencing, the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is not entitled to resentencing.  (*Ibid*.) The admission of evidence in the hearing shall be governed by the Evidence Code, except that the trial court may consider evidence previously admitted at any prior hearing or trial that is admissible pursuant to current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The parties may offer new or additional evidence to meet their respective burdens.  (*Ibid*.)

At the evidentiary hearing, the trial court acts as an independent fact finder in determining whether the prosecution

has met its burden.  (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022 (*Owens*).)  We review the trial court's factual findings for substantial evidence.  (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)  "Under this standard, we review the record ""in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.""" (*Ibid*.)  In conducting this review, ""[w]e resolve neither credibility issues nor evidentiary conflicts . . . ." [Citation.]' [Citation.]" (*Owens*, at p. 1022.)

### Major Participant and Reckless Indifference

The requirements of being a major participant and acting with reckless indifference are related and "'often overlap.'" (*People v. Clark* (2016) 63 Cal.4th 522, 615 (*Clark*).)  In reviewing the trial court's findings, we analyze the totality of the circumstances.  (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).)

### Major Participant

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), our Supreme Court enumerated several factors for courts to consider in determining whether a defendant is a major participant in the underlying felony, including: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or

her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Id.* at p. 803, fn. omitted; accord, *Clark, supra,* 63 Cal.4th at p. 611.)

Here, substantial evidence supports the trial court's finding that appellant was a major participant. The trial court found appellant was "actively involved in the planning" of the burglary. He admitted that he and Williams went to the victim's house "to get the bullets." The gun was obtained shortly before they left Williams's house. Appellant was also armed with a hunting knife. They walked together to the victim's home to carry out that plan. They were both active participants.

After the shooting, appellant and Williams took the car, hid the property and the firearm, then drove around and picked up girls. As the trial court explained, "[t]hese actions support the notion they were major participants."

Although the trial court "stopped short" of finding appellant was the "actual shooter," it opined it was "close based on the evidence . . . presented." Regardless, the trial court found appellant intended to commit the "incredibly dangerous act" of burglarizing a residence that is "well known" to have hordes of ammunition, at night, where it is foreseeable that deadly force would be used to protect that ammunition.

Considering the totality of the circumstances, substantial evidence supports the trial court's finding that appellant was a major participant in the burglary that led to the victim's death.

*Reckless Indifference*

"Reckless indifference to human life has a subjective and an objective element. [Citation.] As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and

14

he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.] As to the objective element, "'[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'" [Citations]." (*Scoggins*, *supra*, 9 Cal.5th at p. 677.)

"Relevant factors include: Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony? [Citation.]" (*Scoggins*, *supra*, 9 Cal.5th at p. 677; accord, *Clark*, *supra*, 63 Cal.4th at pp. 618-623.) "'"[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient."'" (*Scoggins*, at p. 677, quoting *Banks*, *supra*, 61 Cal.4th at p. 803.) The defendant's youth may also be a relevant consideration in determining whether a juvenile defendant acted with reckless indifference to human life. (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 990-991.)

Here, substantial evidence supports the trial court's finding that appellant acted with reckless indifference to human life. As discussed above, even if appellant was not the actual shooter, he should have known his actions were "extremely dangerous to human life." He knew Williams had a firearm, was present when

15

the victim was shot, and made no effort to intervene or render aid.

Additionally, the trial court explicitly considered appellant's youth in making its determination, noting that applying the principle was "a difficult task." The trial court nevertheless found appellant's youth did not negate the reckless indifference to human life factor.

At bottom, appellant asks us to reweigh the evidence differently than the trial court but that is beyond our purview on substantial evidence review. (*Owens*, *supra*, 78 Cal.App.5th at p. 1022.)

*Disposition*

The judgment (order denying petition for resentencing) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P. J.


CODY, J.


16

Jesse J. Marino, Judge

Superior Court County of San Luis Obispo

_____

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.